IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

D.G.

      Plaintiff,

v.                                                No. 14-cv-368

**The City of Las Cruces, a municipality in the
State of New Mexico; Former City of Las Cruces Police Chief
Harry Romero and Former City of Las Cruces
Police Chief Richard Williams, and
Michael Garcia, in his individual capacity,**

      Defendants.

## PLAINTIFF'S COMPLAINT TO RECOVER
## DAMAGES FOR DEPRIVATION OF CIVIL RIGHTS

COMES NOW, Plaintiff, by and through her attorneys of record, Kennedy Law Firm, Joseph P. Kennedy and Shannon L. Kennedy, and brings this Complaint to recover damages arising from Defendants' constitutional and discriminatory conduct towards Plaintiff. In support of this Complaint, Plaintiff states as follows:

## JURISDICTION AND VENUE

Plaintiff brings this Complaint under 42 U.S.C. Section 1983 for damages resulting from the Deprivation of Civil Rights inflicted upon her by Defendants. This Court has subject matter jurisdiction pursuant to 28 U.S.C § 1331. Personal jurisdiction is proper since all parties reside or are or were at all material times employed in the District. Additionally, Defendants' actions giving rise to Plaintiff's claims took place within the District. Venue is properly laid in this Court pursuant to 28 U.S.C. § 1391(b) as Defendants' actions causing injury to the Plaintiff took place within the District.

## PARTIES

1. Plaintiff D.G., is an individual and resides in Las Cruces, New Mexico.

2. Defendant Michael Garcia was a law enforcement officer and at all times material was an employee of the Las Cruces Police Department.

3. Defendant Garcia was acting under color of state law at all relevant times at issue in this Complaint.

4. Defendant Former Las Cruces Chief of Police Harry Romero was a law enforcement officer when D.G. was volunteering and interning for the Las Cruces Police Department and was acting under the color of state law at all relevant times.

5. Defendant Former Las Cruces Chief of Police Richard Williams was a law enforcement officer when D.G. was sexually assaulted and battered by Defendant Garcia and was acting under the color of state law at all relevant times.

6. Defendant City of Las Cruces is a municipality in the State of New Mexico.

## **FACTUAL BACKGROUND**

7. In the summer of 2008, D.G. was thirteen years old.

8. D.G. aspired to work in law enforcement.

9. D.G.'s mother contacted the Las Cruces Police Department to inquire as to whether her daughter could volunteer with the police department as part of her career day as her daughter wanted to be a detective.

10. The summer of 2008, D.G. began volunteering for the Las Cruces Police Department working under the supervision of Danny Garcia, Team Leader of the Identification Section.

11. She was required to comply with a dress code including wearing a collared blue polo shirt and jeans or dark blue or black pants while working for the police department.

12. In July of 2008, Las Cruces Chief of Police Harry Romero wrote a letter recognizing the outstanding work of D.G., as she completed the sorting, and cataloguing of the backlog of the 2005-2008 fingerprint cards in a relatively short period of time over the summer.

13. For two years D.G., continued to volunteer with the Las Cruces Police Department grasping the basic elements of law enforcement and honing her skills to become a detective.

14. On May 5, 2009, Defendant Garcia received verbal counseling for unsafe operation of his patrol unit for driving 48 miles per hour in a 35 mile per hour zone without engaging his emergency equipment. Defendant Garcia was the driver although he was with his partner Detective Rudy Sanchez.

15. On August 6, 2010, Defendant Garcia had sexual intercourse in his patrol unit with another officer's girlfriend on 1715 Vado Road, Las Cruces, New Mexico. Officer Sepulveda reported that Defendant Garcia had sexual intercourse in his patrol unit with his girlfriend to internal affairs. Sgt. Miguel Domingez took the complaint from Officer Sepulveda. A condom, recovered from Defendant Garcia's patrol unit by Officer Sepulveda, was tagged by him into evidence.

16. During the investigation of the sexual acts by Defendant Garcia in the patrol unit, investigators found an opened bottle of wine. Defendant Garcia admitted that he consumed wine while in his LCPD issued patrol unit. Defendant Garcia was not terminated for using his patrol unit as a place to drink wine and have sexual contact with another officer's girlfriend.

17. In January of 2011, D.G. began working as a Las Cruces Public Schools Excel student assigned to the Las Cruces Police Department. As an Excel student, D.G. was still required to wear her blue collared polo shirt and jeans or dark blue or black pants while on the job.

18.     While working as an Excel student, D.G. was supervised by Joseph Campo. During this time, D.G. was watched over by and mentored by veteran detectives, including Irma Palos, Edgar Rosas, and Defendant Michael Garcia.

19.     Defendant Detective Garcia had supervised and unsupervised contact with D.G., and engaged in sexual banter with other male police officers while on the job in front of their chain of command and supervisors.  D.G. did not feel comfortable questioning or complaining about the sexual banter between the male officers to her supervisors as it seemed to be routine and part of the culture of the police department.

20.     D.G. was unaware of any police department policies prohibiting sexual harassment or sexual discrimination.

21.     In spite of the sexist banter, D.G. thrived working in the Las Cruces Public Schools Excel Program with the Las Cruces Police Department so much so that over the years she had become like a department mascot and trusted volunteer student employee.

22.     On January 15, 2011, Defendant City of Las Cruces received a complaint that Defendant Garcia had threatened the ex-husband of his girlfriend during a child custody exchange. The ex-husband complained that Defendant Garcia used his partner Detective Rudy Sanchez to serve back child support papers on him at his place of employment on behalf of his ex-wife, Defendant Garcia's girlfriend. In front of their ten year old daughter, the ex-husband complained that Defendant Garcia threatened him, "you better watch your back and your car."

23.     On May 1, 2011, Joseph R Campo, Police Services Specialist with the Las Cruces Police Department, wrote a letter recommending D.G., "for any position within the law enforcement field, or any position of trust."

24.     Excel students were assigned to different departments of the Las Cruces Police Department.   D.G. was assigned to work in the fingerprinting department and enjoyed working directly with detectives.

25.     On March 29, 2011, Defendant City of Las Cruces received a citizen complaint that Defendant Garcia was having a sexual relationship with his former girlfriend who was a convicted felon.

26.     On or about May 4, 2011, D.G. was assigned to go on a ride along with Defendant Las Cruces Detective Michael Garcia in his unmarked police car.   She wore her collared blue polo and jeans pursuant to the department dress code for Excel student volunteers.

27.     Defendant former Detective Michael Garcia was born March 5, 1976, making him thirty eight years old in May of 2011. He was 5'8 feet tall and weighed one hundred and eighty pounds.  D.G. had recently turned seven-teen years old.

28.     On or about May 4, 2011, at approximately 3:19 pm, Defendant Detective Michael Garcia took D.G., from the police station as a ride-along Excel program student, to a homicide scene in his unmarked police car.

29.     Detective Michael Garcia took off his handgun and badge and put it in the middle console of his unmarked police car.

30.     Defendant Detective Michael Garcia and D.G. finished their work at the homicide scene within an hour of their arrival.

31.     Rather than use his unmarked patrol car to return D.G., an Excel student and a ride-along, to the police station, he drove her into an unfamiliar neighborhood.

32.     D.G. became afraid as Defendant Garcia was her Excel program mentor and he was acting in a very strange manner by not driving her, a ride-along, back to the police station.

33. She asked Defendant Michael Garcia what was in the neighborhood. He responded by driving further down the road away from any people.

34. When Detective Michael Garcia reached an isolated area of the road he parked his patrol car.

35. Defendant Detective Michael Garcia then unzipped D.G.'s pants.

36. Defendant Detective Michael Garcia forced his fingers inside D.G.'s vagina causing her physical pain and injury.

37. Defendant Michael Garcia continued to push his fingers into D.G.'s vagina continuing to cause her pain and physical injury.

38. Defendant Garcia's actions terrified D.G.

39. D.G. considered how to escape from Defendant Garcia's patrol car.

40. D.G. grabbed the door and stared out of the window of his patrol car as Defendant Garcia unzipped his pants and grabbed her hand.

41. Defendant Garcia took D.G.'s hand and placed it on his penis.

42. Defendant Garcia started moaning and breathing hard.

43. Defendant Garcia looked at D.G. angrily.

44. D.G. started crying, shaking and feeling like she could not breathe or speak.

45. Defendant Garcia became frustrated that D.G. was not rubbing his penis to his liking and D.G. could feel wetness on her hand.

46. Defendant Garcia threw her hand back at her, began rubbing his head with his hands and said, "God Dammit." She wiped her hand on her jeans.

47. Defendant Garcia said to D.G. "you can have my job anytime you want it."

48.     Defendant Garcia told D.G. never to tell anyone what he had done to her as he would lose his job.

49.     Defendant Garcia told D.G. that he was married with two boys and that if she reported his conduct that his life would be over.

50.     Defendant Garcia then drove D.G. back to the Las Cruces Police Department and dropped her off.

51.     When Defendant Garcia dropped D.G. off at the Police Department, no one was at the station.

52.     D.G. drove herself home.

53.     To protect herself from any further sexual assaults and sexual batteries, D.G. requested that she no longer participate in the ride-a-long program and that she be reassigned to clerical duties at the police department until the end of her internship.

54.     D.G. decided that she could no longer pursue a career in law enforcement as the actions of Defendant Garcia destroyed her ability to trust male officers.

55.     D.G. became severely depressed.

56.     D.G. took a job working in a restaurant.

57.     D.G. began suffering flash backs of Defendant Garcia's rape of her.

58.     D.G. attempted suicide.

59.     D.G. was working in a restaurant when Las Cruces Detective Irma Palos and her husband arrived to eat at the restaurant.

60.     Detective Irma Palos asked D.G. why she had not applied to the police academy.

61.     D.G. told Detective Irma Palos it was because when she was an Excel program student at the Las Cruces Police Department awful things had been done to her by a Las Cruces Police Officer.

62.     D.G. told Detective Irma Palos that being a police officer was so important to her and that it had been taken away from her by that officer.

63.     D.G. told Detective Irma Palos that she had never told anyone and that she needed to tell someone because her life was falling apart.

64.     Detective Palos discovered the CAD reports documenting the day that D.G. and Defendant Garcia had gone on a ride-along to the homicide scene.

65.     Detective Palos took D.G. back to the location and D.G. wept.

66.     Detective Palos told D.G. that she needed to confront Defendant Garcia about what had a happened while wearing a wire.

67.     On Detective Palos direction, D.G. confronted Defendant Garcia while wearing a wire.

68.     During that encounter, Defendant Garcia told D.G. that he understood how she felt because he had been sexually molested by his stepfather for a number of years and that he had kept that secret most of his life from his mother.  He asked her if she had attempted to kill herself.  She responded that she had attempted suicide and that she needed to tell because she needed to get help.

69.     D.G. was terrified during this wired confrontation as she was afraid that Defendant Garcia would use his service revolver, as she could see it on the console of his patrol unit, to harm either her or himself or both of them.

70.     On June 30, 2011, Lt. Shannon Martin received a complaint that Defendant Garcia had re-victimized a female rape victim by telling her that she was liar and that she had exchanged sex

for drugs and thus the sexual contact was consensual in his opinion. He also photographed the victim in a manner that she found to be harassing.

71.    On August 17, 2012, Defendant City received a citizen complaint from women who on June 12, 2012, was a victim of criminal sexual penetration. She complained that Detective Garcia was assigned to handle her case and that he had made no attempt to contact her in spite of her multiple attempts to contact him.

72.    On or about August 23, 2013, Detective Edgar Rosa met with Defendant Michael Garcia at the Las Cruces Police Department.

73.    Detective Rosa read Defendant Michael Garcia his Miranda rights.

74.    Defendant Michael Garcia waived his Miranda rights and provided a tape recorded statement to Detective Rosa.

75.    Defendant Michael Garcia explained that he had taken D.G. in his unmarked patrol unit to Freedom Street off McClure Road, Las Cruces, New Mexico.

76.    Defendant Michael Garcia admitted to having sexual contact with D.G. in his unmarked patrol unit.

77.    Defendant Michael Garcia admitted to abusing his position of authority by having sexual contact with D.G. in his patrol unit.

78.    While speaking with Detective Rosa about his sexual contact with D.G., Defendant Michael Garcia said, "'I just fucked up. I know I did.' She was like 'Oh I'm not gonna.'"

79.    During his confession, Defendant Garcia said to Defendant Rosa, "The badge gets you the pussy and the pussy gets your badge, you know."

80.    Detective Rosa, during his investigation, learned that Defendant Garcia was HIV positive.

81.     Defendant Garcia told Detective Rosa that he "did touch [D.G] on top." He also confessed to Detective Rosa that in D.G.'s presence in the car he ejaculated.

82.     On August 23, 2013, Detective Irma Palos sought an arrest warrant for Defendant Michael Garcia for Criminal Sexual Penetration in the Fourth Degree and Criminal Sexual Contact of a Minor in the Second Degree (Person in a Position of Authority) contrary to Section 30-9-11(A) & (F) & 30-09-13(B), NMSA 1978, factually based on his rape of D.G. in May of 2011.

83.     Defendant Garcia was not only indicted for sexually molesting D.G.  He has also been indicted for sexually molesting his stepdaughter from the time she was eleven years old until she was seventeen years of age.

84.      In the course of the state criminal prosecution of Defendant Garcia, D.G. learned that Defendant Garcia was HIV positive.

85.     Upon learning that Defendant Garcia was HIV positive, D.G. was tested to determine whether she was HIV positive.

86.     On April 17, 2014, Defendant Garcia plead guilty to a violation of 18 U.S.C. § 242, Deprivation of Rights under Color of Law for the criminal sexual penetration and kidnapping of D.G., while acting under the color of state law.

87.     On April 17, 2014, Defendant Garcia admitted under penalty of perjury that he formerly worked as a detective in Las Cruces Police Department where he focused on sex crimes and child abuse investigations.  Knowing the harm caused by sexual abuse, he nonetheless engaged in the criminal sexual penetration and kidnapping of D.G.

88.     On April 17, 2014, Defendant Garcia admitted under penalty of perjury that in his capacity as a detective, he worked with students who participated in Las Cruces High School's

Excel program by interning at the Las Cruces Police Department and that D.G. was one of those student interns.

89.     On April 17, 2014, Defendant Garcia admitted under penalty of perjury that on or about May 4, 2011, D.G. accompanied him on a ride along in his department issued vehicle to a crime scene.

90.     On April 17, 2014, Defendant Garcia admitted under penalty of perjury that after visiting a crime scene, he drove D.G. down isolated streets into a secluded neighborhood that was still under construction instead of driving D.G. directly back to the police department so that she could retrieve her belongings and go home.

91.     On April 17, 2014, Defendant Garcia admitted under penalty of perjury that he pulled the car over, reached over to D.G., who was in the passenger seat, and he unbuttoned her jeans.

92.     On April 17, 2014, Defendant Garcia admitted under penalty of perjury that he then put his hands in D.G.'s underwear and used his fingers to penetrate her vagina.

93.     On April 17, 2014, Defendant Garcia admitted under penalty of perjury that as result, D.G. experienced pain and physical injury.

94.     On April 17, 2014, Defendant Garcia admitted under penalty of perjury that he then unzipped his own pants and grabbed D.G.'s hand and placed it on his penis, forcing her to stroke Defendant Garcia's penis.

95.     On April 17, 2014, Defendant Garcia admitted under penalty of perjury that when he touched D.G. and then when he made her touch him, Defendant Garcia knew it was against the law and that D.G. did not want him to do it, but he did it anyway.

96.     On April 17, 2014, Defendant Garcia admitted under penalty of perjury that his actions were a willful violation of D.G.'s constitutional rights, and more specifically, a violation of her right to be free from unreasonable seizure.

## COUNT I: FOURTH AMENDMENT VIOLATIONS AGAINST DEFENDANT GARCIA

Plaintiff incorporates the preceding paragraphs by reference herein.

97.     Plaintiff has and had a Fourth Amendment right to be free from sexual extortion, sexual molestation, sexual harassment, sex discrimination, criminal sexual contact and penetration, and kidnapping while in police custody as a ride-along and while acting as a student volunteer pursuant to the Fourth Amendment of the United States Constitution.

98.     No objectively reasonable officer would sexually assault and batter a ride-along in his custody and control in his unmarked police car.

99.     The sexual assaults and batteries of Plaintiff constitute unreasonable seizures and excessive force in violation of the Fourth Amendment of the United States Constitution.

100.    Defendant Garcia was assigned the duty to protect and serve, to guard and to safely transport female student interns without forcing sexual acts on them while in his police car.

101.    Defendant Garcia was assigned the duty of mentoring D.G. while she was a student in the public schools Excel Program and while she was a ride-along in his unmarked police unit without forcing sexual acts on her while she was in his police car.

102.    Defendant Garcia sexually molested and sexually harassed Plaintiff in a manner which was objectively unreasonable.

103.    Defendant Garcia's acts violated Plaintiff's Fourth Amendment rights to be secure in her person from unreasonable seizures.

104. Defendant Garcia's deprivation of Plaintiff's rights caused Plaintiff damages including physical injury, debilitating depression, loss of career and educational opportunities, pain and suffering, and chronic post-traumatic stress syndrome.

105. Defendant Garcia acted willfully, knowingly and purposefully and/or with deliberate indifference to deprive Plaintiff of her Constitutional Rights. As a result of the nature of Defendant's conduct, Plaintiff is entitled to recover punitive damages against the individual Defendant Garcia for his reprehensible on duty conduct.

### COUNT II – FOURTEENTH AMENDMENT:  SUBSTANTIVE DUE PROCESS & EQUAL PROTECTION VIOALTIONS AGAINST DEFENDANT GARCIA

Plaintiff incorporates the preceding paragraphs by reference herein.

106. Defendant Garcia was deliberately indifferent to Plaintiff's liberty interests which entitles Plaintiff the right to prevent persons in governmental positions of power from sexually penetrating her body while she is working with or being mentored by them.

107. Defendant Garcia sexually battered Plaintiff, based on her gender, in violation of her right to bodily integrity and a free public education, and is liable for intentional discrimination in violation of 42 U.S.C. § 1983 and the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution.

108. Defendant Garcia's conduct under the color of law grossly depriving D.G. of fundamental liberty interests of integrity and privacy in her own body. Defendant Garcia sexually battered Plaintiff, based on her gender, in violation of her right to bodily integrity and is liable for intentional discrimination in violation of 42 U.S.C. § 1983 and the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution.

109. The Defendant ignored substantive Due Process and Equal Protection requirements when he used his authority to force a female Excel Program student to engage in sexual acts, he would

not have otherwise received, but for his position and power as her mentor in the Excel program in the Las Cruces Police Department.

110. Defendant's actions discriminated against D.G. on the basis of her gender, female, as she was unable to pursue her educational and career goals of becoming a detective as a result of Defendant's rape of her in the unmarked patrol car in violation of the Equal Protection Clause of the United States Constitution.

111. Defendant's actions intentionally and willfully deprived Plaintiff of her liberty interests without due process of law and without recourse for the arbitrary, abusive, harassing and criminal conduct of Defendant against a female Excel student during a ride-along.

112. Defendant's actions proximately caused damages to Plaintiff as previously alleged.

113. Defendant acted willfully, knowingly and/or purposefully, and with deliberate indifference to deprive Plaintiff of her substantive due process and equal protection constitutional rights to equality. Due to the nature of Defendant's conduct, Plaintiff is entitled to recover punitive damages against individual Defendant Garcia.

**COUNT III -TITLE IX, 20 U.S.C. §§1681-1688- (Defendant City of Las Cruces); and, FOURTEENTH AMENDMENT SUBSTANTIVE DUE PROCESS & EQUAL PROTECTION CLAIMS**
**42 U.S.C. § 1983 AGAINST DEFENDANT CITY OF LAS CRUCES AND DEFENDANT FORMER CHIEFS OF POLICE HARRY ROMERO AND RICHARD WILLIAMS**

114. The contents of paragraphs above, are incorporated hereinto by reference as if set forth in full.

115. Defendant City and Defendant Chiefs of Police Harry Romero and Richard Williams deprived Plaintiff her substantive due process right to bodily integrity, to a liberty interest (guaranteed by mandatory state statute and code) and to her property right to a public education

(guaranteed by state constitution) by creating an educational environment with the police department that de facto discriminated against female Excel students.

116. At all times material hereto, Plaintiff and other female students were participants in the Excel program administered by Defendant City, its officials, administrators and employees.

117. Upon information and belief, at all times material Defendant City received federal funding and financial assistance.

118. Defendant City and the Defendant Chiefs have refused to institute an effective complaint mechanism for parents, volunteers, employees and students to report the sexual misconduct of male police staff. Defendants have actively resisted reforming the process for reporting complaints against male police staff who act on duty as if they are members of an exclusive boy's club and locker room male jocular culture. They have refused to adequately discipline offending officers who are demonstrably unable to work with young women and female officers in a professional, safe and effective manner.

119. Defendant City of Las Cruces and Defendant Chiefs were aware of, or should have been aware of, the pervasive atmosphere of sexual harassment and abuse created by Defendant Garcia and other male officers within the police department. Defendant's failure to act in the face of such knowledge creates and/or enhances the risk of harm and demonstrates deliberate indifference to the danger to Plaintiff and all female students and volunteers.

120. Upon information and belief, Defendant City and Defendant Chiefs had not been instructed, nor had they provided any instruction, as to how to respond to male-on-female, sexual harassment, abuse and assault to student volunteers or interns. The deliberate indifference of Defendant City, its officials, administrators and employees, to the acts of sexual abuse, as well as its failure to adopt, publish and inculcate appropriate policies regarding such abuse, sexual

hazing, and harassment, deprived Plaintiff of benefits under Title IX (against Defendant City only), and in violation of the Equal Protection Clause of the United States Constitution (supervisory liability against the former Police Chief Defendants). It further caused Plaintiff to be excluded from participation in, denied the benefits of, and be subject to discrimination on the basis of sex under an education program or activity receiving federal financial assistance.

121.    Defendant City and Defendant Chiefs had actual knowledge of the inappropriate actions of Defendant Garcia.  Defendants failed to perform an adequate pre-hiring and/or fitness for duty psychological screening(s) investigations or tests to protect the public or employees from psychologically unfit officers such as Defendant Garcia.  Their failure to conduct adequate screening of their officers placed D.G. and others in danger. Their failure to act in the face of such knowledge creates and/or enhances the risk of harm and demonstrates deliberate indifference to the well-being of Plaintiff and others who assume they can trust officers.

122.    Defendants' deliberate indifference to the safety of Plaintiff and other students violates Plaintiff's right to bodily integrity under the Fourteenth Amendment of the United States Constitution and the Plaintiff's property rights to a public education and career opportunities without due process.

123.    The Constitutional rights violated by Defendant City were clearly established before D.G. volunteered and worked for the City and any reasonable City administrator would have been aware that the conduct described herein would violate Plaintiff's constitutional rights.

124.    More it is clearly established that citizens have the right under the Fourteenth Amendment to be free from state action which affirmatively creates or exacerbates a danger to them and to be free from deprivations of their right to substantive due process resulting from

intrusions into their bodily integrity and to their property right to a public school education free from sexual molestation.

125. Defendant Former Las Cruces Chiefs of Police's failure to adequately supervise and discipline Defendant Garcia for his acts of sexual indiscretion contributed to a hostile and discriminatory workplace environment in which D.G. could be taken from a homicide scene by a male detective and sexually battered.

126. Defendant Former Las Cruces Chiefs of Police failed to notify Plaintiff's parents of any department policy allowing male detectives to ride along alone in their patrol units with student volunteers or Excel interns. This failure to notify D.G.'s parents of this dangerous policy enhanced the risk of harm to D.G. and resulted in her sexual battery.

127. As a direct and proximate consequence of the discrimination and violation of Title IX, the Equal Protection Clause, and the Fourteenth Amendment Plaintiff suffered the result and injuries and damages described below.

## COUNT IV -MUNICIPAL LIABILITY AGAINST DEFENDANT CITY

128. The contents of paragraphs above, are incorporated hereinto by reference as if set forth in full.

129. In practice, the City of Las Cruces has cultivated and encouraged a sexualized culture within its police department which has created an acceptance and expectation that law enforcement officers will engage in sexual harassment of women and girls.

130. The City of Las Cruces encouraged a sexualized culture by allowing officers to engage in sexual banter and by failing to adopt any policy or procedure which discouraged the harassing banter thereby normalizing the conduct.

131. The sexualized culture promoted by the City of Las Cruces has caused teenage girls and women to be objectified and dehumanized by Las Cruces police officers.

132. The objectification and dehumanization of women has caused Las Cruces police officers to engage in sexual harassment, sexual batteries, and sexual misconduct while on duty, while on City property, within the scope of their employment, or under color of law without recourse, reprimand or sanctions imposed against the offending officers.

133. The City of Las Cruces' silence on sexual misconduct within the police department has promoted the sexualized environment and normalized sexual harassment.

134. The objectification of women and normalization of sexual harassment creates an environment within the Las Cruces Police Department where employees, volunteers, fellow officers, and citizens do not report instances of sexual misconduct and/or harassment.

135. When instances of sexual misconduct and/or harassment are reported, the City of Las Cruces fails to adequately respond to allegations and discipline offending officers, including failing to adequately discipline Defendant Garcia for his multiple acts of conduct unbecoming an officer both on and off the job.

136. The City's failure to respond to reports of sexual misconduct and/or harassment further encourages the existing sexualized culture and chills the reporting of more serious allegations of sexual batteries.

137. Sexual objectification and dehumanization of women increases sexual violence against women.

138. The City's encouragement of the police department's sexualized culture which normalizes the sexual objectification and dehumanization of women has created a policy and practice which

encourages officers to sexually exploit women while acting within the course and scope of their duty as officers.

139.	On or about August of 2010, the City of Las Cruces was on notice that Defendant Garcia used his uniform and his department vehicle to receive sexual gratification from women after Officer Sepulveda reported the Defendant Garcia engaged in sexual conduct with his girlfriend while in his unit.

140.	The City's failure to adequacy reprimand Defendant Garcia for engaging in sexual acts while in a department vehicle ratified the behavior and created permissiveness to use his department vehicle for sex.

141.	Defendant Garcia's use of his department vehicle for sex put the City of Las Cruces on notice that Defendant Garcia used his division of power to attract and/or exploit women.

142.	The City of Las Cruces allowed Defendant Garcia to transport women in his patrol unit alone and unsupervised creating an enhanced danger to women in his custody and control.

143.	The City of Las Cruces failed to implement a policy to supervise its officers when engaging while they interacted with minors.

144.	The City of Law Cruces failed to implement a policy which would prevent sexual harassment and/or batteries against minors when they allowed a male officer the ability to interact and seclude a female minors without anybody from the City of police department noticing in their department issued vehicles.

145.	The failure to implement a policy which supervises adult officers interactions with minors combined with the sexualized culture not only gave Defendant Garcia a means to molest D.G., but also implicitly ratified Defendant Garcia's sexual exploitation of D.G..

146. The City of Las Cruces has used its peace officers to interfere with D.G.'s bodily integrity interests which entitles D.G. the right exclude persons from violating her body.

147. The City of Las Cruces' actions proximately caused damages to D.G. as previously alleged.

## JURY DEMAND

148. Plaintiff hereby demands trial by jury.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff seeks the following relief:

I. Actual and compensatory damages sufficient to make Plaintiff whole.

II. Punitive damages against Defendant Garcia sufficient to punish him and to deter further wrongdoing;

III. Attorneys' fees, litigation expenses, costs, pre- and post-judgment interest as provided by law; and

IV. Such other and further relief as the Court deems just and proper.

Plaintiff demands a jury trial.

    Respectfully submitted,

    */s/ Shannon L. Kennedy*
    KENNEDY LAW FIRM
    Joseph Kennedy
    Shannon Kennedy
    Attorneys for Plaintiff
    1000 2nd St. NW
    Albuquerque, New Mexico 87102
    (505) 244-1400 fax (505) 244-1406