# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

D.G.,

    **Plaintiff,**

v.                                      **No. 14-CV-368 MCA/WPL**

**The City of Las Cruces, a municipality
In the State of New Mexico; Former
City of Las Cruces Police Chief Harry
Romero and Former City of Las Cruces
Police Chief Richard Williams and
Michael Garcia, in his individual
Capacity,**

    **Defendants.**

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on *Plaintiff's Motion for Summary Judgment on Counts I and II of Her Complaint Which Allege Violations of her Fourth and Fourteenth Amendment Rights by Defendant Michael Garcia.* [Doc. 9] The Court has considered the submissions, the relevant law, and is fully informed in the premises. The Motion is Granted-in-Part and Denied-in-Part.

## BACKGROUND

### Factual Background and Procedural History

Plaintiff D.G. began volunteering for the Las Cruces Police Department (LCPD) at the age of 13. [Doc. 9, ¶¶ 1-2] She continued to volunteer at the LCPD for two years. [Doc. 9, ¶ 5] "In January of 2011, D.G. began working as a Las Cruces Public Schools Excel student assigned to the Las Cruces Police Department." [Doc. 9, ¶ 6] D.G. was

"mentored by veteran detectives, including Irma Palos, Edgar Rosas, and Defendant Michael Garcia."  [Doc. 9, ¶ 7]  Mr. Garcia "worked as a detective in the Las Cruces Police Department where he focused on sex crimes and child abuse investigations." [Doc. 9, ¶ 8 (internal quotation marks, citation and brackets omitted)]

>Mr. Garcia, under penalty of perjury, admitted the following:

>I formerly worked as a detective in the Las Cruces Police Department where I focused on sex crimes and child abuse investigations.  In my capacity as detective, I worked with students who participated in Las Cruces Public High School's Excel program by interning at the Las Cruces Police Department.  D.G. was one of those students.  On or about May 4, 2011, D.G. accompanied me on a ride-along in my department-issued vehicle.  After visiting a crime scene, instead of driving D.G. directly back to the police department so that she could retrieve her belongings and go home, I drove down isolated side streets into a secluded neighborhood that was still under construction.  I then pulled the car over, reached over to D.G., who was in the passenger seat, and I unbuttoned her jeans.  I then put my hand in D.G.'s underwear and used my fingers to penetrate her vagina.  As a result, D.G. experienced pain.  I then unzipped my own pants and grabbed D.G.'s hand and placed it on my penis, forcing her to stroke my penis.  When I touched D.G. and then when I made her touch me, I knew it was against the law and that D.G. did not want me to do it, but I did it anyway.  I admit that this was a willful violation of D.G. (*sic*) constitutional rights, and more specifically, a violation of her right to be free from unreasonable seizure.

[Doc. 9-3, pp. 5-6]  Mr. Garcia was charged with and pleaded guilty to "Deprivation of rights under color of law" under 18 U.S.C. § 242.  [Doc. 9, ¶ 24]  The above statement by Mr. Garcia is excerpted from "Defendant's Admission of Facts" in his Plea Agreement in his criminal action.  [Doc. 9-3, pp. 5-6]  D.G. was seventeen years old.  [Doc. 9-1; Doc. 1, ¶ 27]  Mr. Garcia was sentenced and a final Judgment has been entered.  *United States v. Garcia*, No. 14-CR-1251-NR, Doc. 23 (D.N.M. Nov. 25, 2014).

### *Procedural Background*

Mr. Garcia pleaded guilty to violation of 18 U.S.C. § 242 on April 17, 2014. [Doc. 9-3, p. 3]   The next day, D.G. filed her Complaint in this Court, alleging the following Counts:  Count I, Fourth Amendment Violations Against Defendant Garcia; Count II, Fourteenth Amendment Substantive Due Process and Equal Protection Violations Against Defendant Garcia; Count III, Title IX, 20 U.S.C. §§ 1681-88 (Defendant City of Las Cruces), and Fourteenth Amendment Substantive Due Process and Equal Protection Claims/42 U.S.C. § 1983 Against Defendant City of Las Cruces and Defendants Former Chiefs of Police Harry Romero and Richard Williams; and Count IV, Municipal Liability Against Defendant City.  [Doc. 1]  D.G.'s claims against Mr. Garcia are against him in his personal capacity.  [Doc. 1, p. 1 (caption), ¶¶ 97-113]

On May 16, 2014, prior to Defendants filing Answers (and prior to their deadline to answer), Plaintiff filed *Plaintiff's Motion for Summary Judgment on Counts I and II of her Complaint which Allege Violations of her Fourth and Fourteenth Amendment Rights by Defendant Michael Garcia*.  [Doc. 9]  Relying on Mr. Garcia's Plea Agreement, in which Mr. Garcia admitted he was acting under color of state law, D.G. argues that there is no genuine issue of material fact and she is entitled to judgment as a matter of law. [Doc. 9, p. 1]   D.G. urges this Court to apply the doctrine of collateral estoppel to conclude as a matter of law that Mr. Garcia violated her Fourth and Fourteenth Amendment rights and did so acting under the color of state law.  [Doc. 9, pp. 8, 12-13]

The City Defendants oppose D.G.'s motion on three grounds:  1) she did not seek concurrence from the opposing parties before filing the motion; 2) the motion is premature as no Defendants had answered and thus there was no joint status report

3

allowing discovery or motions; and 3) the doctrine of collateral estoppel should not be applied in concluding that Mr. Garcia acted under the color of law because, among other things, the City did not have the opportunity to litigate the issue in Mr. Garcia's criminal proceeding. [Doc. 10, pp. 4, 5, 6-10]

Mr. Garcia initially responded to D.G.'s Motion for Partial Summary Judgment by requesting the Court to delay ruling on the Motion pursuant to Fed. R. Civ. P. 56(d), arguing that he could not present facts in his defense because he was awaiting sentencing in his criminal case.  [Doc. 17]  Mr. Garcia requested this Court to defer ruling on the Motion for Summary Judgment until after he was sentenced.  [Doc. 17, p. 5]  Mr. Garcia indicated that he may wish to argue to the jury that his guilty plea was just a compromise, and not conclusive proof of the underlying events.  [Doc. 17, p. 3]  Subsequently, he withdrew that Response and did not file any other responsive document.  [Doc. 20]  Mr. Garcia gave no reason for the withdrawal of his response; however, he withdrew it the day after Plaintiff's counsel's suggested in her Reply Brief that, by Defense counsel's (Ms. Roger's) action of potentially allowing her client to be exposed to charges for perjury, there was a potential conflict of interest between Mr. Garcia and his counsel. [Doc. 18, pp. 10-12]

On February 24, 2015, this Court entered an *Order to Show Cause*, ordering the parties to file simultaneous briefs on the following issues:

> 1.      Whether Ms. Rogers should be disqualified as Mr. Garcia's attorney based on the facts now before the Court. . . .
> 2.      Whether Defendant Garcia seeks leave to file an additional brief pursuant to Rule 56(d), and if so, on what basis he should be permitted to do so.

3.      Whether there is any bar to the Court considering D.G.'s *Motion for Summary Judgment*.  [Doc. 9]

[Doc. 90, pp. 4-5]  The City Defendants filed a Response to the *Order to Show Cause* taking no position on the above issues.  [Doc. 100]  D.G. filed a Response to the *Order to Show Cause* stating that there is no conflict between Mr. Garcia and his attorney and arguing that Mr. Garcia should not be permitted to file a supplemental brief based on application of the doctrine of collateral estoppel and because he waived his opportunity to respond.  [Doc. 102]  Mr. Garcia states there is no conflict between him and his counsel and he requests the opportunity to now file a response to Plaintiff's Motion for Summary Judgment under application of Federal Rule of Civil Procedure 56(b) and (d).  [Doc. 101]  The Court considers these various arguments along with the *Motion for Summary Judgment*, below.

**ANALYSIS**

### *Conflict of Interest*

The Court set out the facts pertinent to whether there is a conflict between Mr. Garcia and his attorney in its *Order to Show Cause.*  [Doc. 90]  There is no evidence of record that Ms. Rogers encouraged her client to commit perjury, endangered his plea agreement, or acted in the best interest of the City of Las Cruces, rather than Mr. Garcia.  [Doc. 90]  Mr. Garcia's plea was accepted and he was sentenced accordingly.  [Doc. 90]  Finally, no party argues that there was a conflict.  [Doc. 100; Doc. 101; Doc. 102]  Thus, the Court concludes there is no evidence of a conflict between Mr. Garcia and his attorney and that no intervention by this Court is necessary.

***Failure to Confer with Opposing Counsel***

Our local rules require the movant to "determine whether a motion is opposed, and a motion that omits recitation of a good-faith request for concurrence may be summarily denied." D.N.M.LR-Civ. 7.1(a). The City Defendants request this Court to summarily deny Plaintiff's Motion for Summary Judgment because Plaintiff failed to seek the Concurrence of Defendants' prior to filing her motion. [Doc. 4-5] Plaintiff responds by admitting that she did not seek concurrence by opposing counsel in this particular motion, however, that Plaintiff's Counsel and the City Defendant's Counsel had been having ongoing communications regarding the relief requested, and, as of the date that Plaintiff filed her motion "it was clear to Plaintiff's counsel, that, although all material facts were undisputed, Defendants did not concur in the motion" based on their analysis of the law. [Doc. 12, pp. 4-5]

The City Defendants have pointed to no prejudice from Plaintiff's failure to seek their concurrence before filing her motion. Moreover, in this case, denying the now fully-briefed motion serves no benefit for judicial economy. Under the circumstances, it is more appropriate that this Court now admonish Plaintiff's counsel to request concurrence from opposing counsel before filing any motions in this Court, dispositive or otherwise, and to abide by the rules of this Court. Plaintiff's Counsel is hereby so admonished. The Court will not summarily deny Plaintiff's Motion for Summary Judgment on this ground.

***Timing of Motion for Summary Judgment***

Next the City Defendants argue that Plaintiff failed to file her motion within the deadline set by Local Rule 56.1, thus her motion is premature and should be denied.  A The Court disagrees.  Local Rule 56.1 states:  "Motions for summary judgment will not be considered unless filed within the deadline set in the Joint Status Report to allow sufficient time for the opposing party to file counter-affidavits and responses thereto, and to permit the Court reasonable time to hear arguments, if granted, and to consider the merits."  D.N.M.LR-Civ. 56.1(a).  Defendants argue that this language prevents a party from filing a Motion for Summary Judgment before the Court enters an Order adopting the Joint Status Report.  Plaintiff counters by pointing to Federal Rule of Civil Procedure 56(b), which states:  "Unless a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment at any time until 30 days after the close of all discovery."  Plaintiff also points to the 2009 Advisory Committee Comments to the Rule.  [Doc. 12, p. 8]  The entire Advisory Comment is pertinent:

> The timing provisions for summary judgment are outmoded. They are consolidated and substantially revised in new subdivision (c)(1). *The new rule allows a party to move for summary judgment at any time, even as early as the commencement of the action*. If the motion seems premature both subdivision (c)(1) and Rule 6(b) allow the court to extend the time to respond. The rule does set a presumptive deadline at 30 days after the close of all discovery.
> *The presumptive timing rules are default provisions that may be altered by an order in the case or by local rule*. Scheduling orders are likely to supersede the rule provisions in most cases, deferring summary-judgment motions until a stated time or establishing different deadlines. Scheduling orders tailored to the needs of the specific case, perhaps adjusted as it progresses, are likely to work better than default rules. A scheduling order may be adjusted to adopt the parties' agreement on timing, or may require that discovery and motions occur in stages--including separation of expert-witness discovery from other discovery.

> Local rules may prove useful when local docket conditions or practices are incompatible with the general Rule 56 timing provisions.
>
> If a motion for summary judgment is filed before a responsive pleading is due from a party affected by the motion, the time for responding to the motion is 21 days after the responsive pleading is due.

Fed. R. Civ. P. 56, 2009 advisory committee's note.

Our Local Rule is not inconsistent with Federal Rule of Civil Procedure 56(b) and cannot be read by inference to diverge from the practice allowed under Rule 56(b) of allowing a motion for summary judgment as early as the commencement of an action. Local Rule 56.1(a) sets a deadline, rather than a beginning and end date, to file a motion for summary judgment.[1]

Furthermore, even assuming Defendants' interpretation of Local Rule 56.1(a) is correct, it does not support summarily denying the Motion for Summary Judgment. Defendants' course of obtaining relief is found in Federal Rule of Civil Procedure 56(d), which requires the non-movant to show "by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition."  Fed. R. Civ. P. 56(d). This the City Defendants have not done.  The City Defendants do not argue that they cannot present facts essential to justify their opposition to this motion or submitted an affidavit or declaration supporting such an argument.  Instead, in their Response Brief, the City Defendants "do[] not dispute Plaintiff's facts" as set out in her Motion for Summary Judgment.  [Doc. 10, p. 3]  Furthermore, the City has now filed its own Motion

---

[1] By contrast, by Local Rule "[a] party may not seek discovery under these rules or the Federal Rules of Civil Procedure before the parties have conferred as required by Fed. R. Civ. P. 26(f) except by agreement of all parties or by Court order."   D.N.M.LR-Civ. 26.4(a).

for Summary Judgment with regard to its Cross-claim against Defendant Michael Garcia. [Doc. 27]  In setting out the undisputed material facts, the City sets out many of the same facts which Plaintiff set out in her Motion for Summary Judgment.  [*See* Doc. 9, UMF 4, 6, 8, 12, 14-19, 21-22, 24; Doc. 28, UMF 7-10, 12-16, 18-21, 25-26]  In short, there is no genuine issue of material fact, and the only question remaining is whether Plaintiff is entitled to judgment as a matter of law.

### *Standard for Summary Judgment*

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted); *see also Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998).  Once the movant meets this burden, the non-moving party is required to put in the record facts showing that there is a genuine issue for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); Fed. R. Civ. P. 56(c).

"A fact is 'material' if, under the governing law, it could have an effect on the outcome of the lawsuit.  A dispute over a material fact is 'genuine' if a rational jury could find in favor of the nonmoving party on the evidence presented."  *Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008) (internal citations omitted).

The trial judge is not to weigh the evidence to determine the truth of the matter, but instead must ask "whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." [*Liberty Lobby*, 477 U.S.] at 252, 106 S.Ct. at 2512. In making the decision, the trial judge must consider all the evidence in the light most favorable to the nonmoving party. *Redhouse v. Quality Ford Sales, Inc.*, 511 F.2d 230, 234 (10th Cir.1975). Thus, the trial judge must deny motions for summary judgment when reasonable jurors might disagree, even though the judge as trier of fact would find for the moving party.

*Dreiling v. Peugeot Motors of Am., Inc.*, 850 F.2d 1373, 1377 (10th Cir. 1988).

### Law Pertaining to Section 1983 and acting Under Color of Law

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983.  A person is acting under color of law "when he abuses the position given to him by the State." *West v. Atkins*, 487 U.S. 42, 49-50 (1988); *Johnson v. Martin*, 195 F.3d 1208, 1218 (10th Cir. 1999).  "[A] person acts under color of state law if he exercises power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Whitney v. State of N.M.*, 113 F.3d 1170, 1174 (10th Cir. 1997) (internal quotation marks, citation and brackets omitted). "The involvement of a state official . . . plainly provides the state action essential to show a direct violation of petitioner's Fourteenth Amendment equal protection rights, whether or not the actions of the police were officially authorized, or lawful." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970).

In *Whitney*, our Circuit of Appeals concluded that the plaintiff's complaint sufficiently pleaded facts to allege that state actor was acting under color of state law where the plaintiff alleged that the state actor sexually harassed her while he was deciding whether or not she was entitled to a license to operate a day care facility. *Whitney*, 113 F.3d at 1174. In other words, the state actor "harassed her at a time that [he] had some state-derived authority over her[,]" and "absent his authority as an agent for the State" he could not have harassed the plaintiff. *Id.* at 1174-75. *Whitney* relied on the analysis of a Ninth Circuit case which concluded that a state worker was acting under color of law because the state worker sexually assaulted and harassed two women who:

> came into contact with [the state worker] because of their need for employment and their understanding that [the state worker] and his department could be relied on to supply jobs to Hmong refugees. The jury could have found that each plaintiff was raped during a meeting with [the state worker] related to the provision of services pursuant to his state employment.

*Id.* at 1174 (quoting *Dang Vang v. Vang Xiong X. Toyed*, 944 F.2d 476, 480 (9th Cir. 1991)). In *Whitney*, our Tenth Circuit overturned the analysis of this Court which had concluded that the plaintiff must establish a supervisor-type relationship to establish that the state employee was acting under color of law, and instead stated that "generally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." *Id.* at 1174 (internal quotation marks and citation omitted).

### *Collateral Estoppel*

"[T]he preclusive effect given in federal court to a prior federal judgment is subject to federal law."  *Dodge v. Cotter Corp.*, 203 F.3d 1190, 1197 (10th Cir. 2000). Our Tenth Circuit has held that the elements of collateral estoppel are:

> (1) the issue previously decided is identical with the one presented in the action in question, (2) the prior action has been finally adjudicated on the merits, (3) the party against whom the doctrine is invoked was a party, or in privity with a party to the prior adjudication, and (4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action.

*Matosantos Commercial Corp. v. Applebee's Int'l, Inc.*, 245 F.3d 1203, 1207 (10th Cir. 2001) (internal quotation marks and citation omitted).

The City Defendants, who were not parties to the prior criminal action, argue that Plaintiff cannot offensively use collateral estoppel against them with regard to the "color of law" element of her claim.  [Doc. 9, pp. 6-10]  Plaintiff concedes that the City Defendants "are correct in asserting that they are not bound by a decision on the basis of collateral estoppel against Defendant Garcia."  [Doc. 12, pp. 11-12]  The Court agrees. Because Plaintiff only brings her claim against Mr. Garcia in his individual capacity, the Court does not need to determine whether the City Defendants would be estopped by Mr. Garcia's plea agreement.  The only question is whether Mr. Garcia is collaterally estopped from taking a different position regarding the facts of this case.

This case requires the Court to determine how to apply federal law to the use of cross-over,[2] offensive collateral estoppel against the same party from a prior federal

---

[2] "The term 'cross-over collateral estoppel' has been used to describe the application of collateral estoppel from a civil proceeding to a criminal proceeding, or vice versa."  *State v. Bishop*, 832 P.2d 793, 794 (N.M. Ct. App. 1992) (citation omitted).

criminal proceeding.  The Court has reviewed the cases cited by the parties and concludes that they are not helpful for the most part, as they either apply state law, are non-binding, or are distinguishable.  *See Trinidad v. City of Boston*, 2010 WL 28171268, (D.Mass. July 16, 2010) (unreported) (involving claim against City and police officer after police officer pleaded guilty to deprivation of rights under color of law under 18 U.S.C. § 242; stating that collateral estoppel could be used against officer but not "offensively against the City of Boston because it has had no opportunity to contest the issue"); *Jiron v. City of Lakewood*, 392 F.3d 410, 416-17 (10th Cir. 2004) (involving application of state law to civil claim against officer for excessive force brought by plaintiff who had previously pleaded guilty to felony menacing by placing the officer in fear of imminent serious bodily injury; predicting that Colorado law would allow defensive use of collateral estoppel against the plaintiff in the subsequent civil proceeding); *Metros v. U.S. Dist. Court for Dis. of Colo.*, 441 F.2d 313, 317 (10th Cir. 1970) (involving civil claim for damages for unlawful search brought by plaintiff who had previously pleaded guilty in state court to possession of heroin; concluding that prior plea precluded subsequent litigation of issue of whether a search was valid); *Slayton v. Willingham*, 726 F.2d 631, 634 (10th Cir. 1984) (involving civil claim against police officers for illegal arrest, excessive force, and violation of right to privacy after plaintiff pleaded *nolo contendere* in Oklahoma state court; concluding that, under Oklahoma law, litigation of the constitutionality of a search "cannot be precluded since it was neither necessary to nor actually decided by the state court's judgment based on the guilty plea").  Nor has the

Court found any Supreme Court or Tenth Circuit cases applying federal law under a similar fact pattern.

Nonetheless, through application of the *Matosantos* factors, the Court concludes that it is appropriate to apply the doctrine of collateral estoppel as against Mr. Garcia. The issues of whether Mr. Garcia sexually assaulted D.G., and whether he did so while acting under color of state law, were decided in the criminal action, as required by the first *Matosantos* factor. *Matosantos*, 245 F.3d at 1207 (requiring that "(1) the issue previously decided is identical with the one presented in the action in question"). Mr. Garcia's criminal matter has been finally adjudicated on the merits. *Matosantos*, 245 F.3d at 1207 (requiring that "(2) the prior action has been finally adjudicated on the merits"). Though there are cases which have determined that a guilty plea is not a final adjudication on the merits, this Court concludes that a guilty plea in Federal Court based on an admission of facts, followed by a judgment and sentence, is a final adjudication on the merits. *See Jiron*, 392 F.3d at 417 & n.5 (stating that "a party who has pled guilty to a crime in Colorado state court is collaterally estopped from relitigating the elements of that crime in a subsequent civil proceeding" but applying Colorado law and expressly stating that it may reach a different result under the law of another jurisdiction); *In re Martinez*, 2012 WL 1641926, *7 n.6 (2012) (unpublished decision) (collecting cases considering whether a plea agreement or a no contest plea meet the requirement of actual litigation). As recognized by other courts, the plea colloquy and admission of facts are significant: "'Because the factual basis rule requires that the trial court be convinced that the plea is founded on fact, we conclude that acceptance of [the insured's] plea is the

14

equivalent of a judicial determination of each of the material elements of [his] crime and satisfies the 'actually litigated' requirement of issue preclusion.'" *State Farm Fire & Cas. Co. v. Fullerton*, 118 F.3d 374, 379 (5th Cir. 1997) (quoting *State Farm Fire & Cas. Co. v. Sallak*, 914 P.2d 697, 700 (Or. Ct. App. 1996). *Fullerton* collected various cases and their rationales as to whether a guilty plea constitutes a final adjudication of an issue, and determined that Texas would conclude that it does, in part because, unlike with an *Alford* plea, the guilty plea at issue was based on factual admissions. *Fullerton,* 118 F.3d at 378-87. Further, the Court considered the rationale that: "For the purposes of collateral estoppel, an issue was 'actually litigated' when it was properly raised, by the pleadings or otherwise, and it was submitted for determination, and determined." *Id.* at 383 (internal quotation marks and citation omitted). *Fullerton* concluded that such reasoning mirrored that applied in the Federal Courts, and this Court agrees. *Id.* at 383-84 (collecting cases). Accordingly, the Court concludes that Mr. Garcia's guilt and the facts admitted by Mr. Garcia in his plea have been fully adjudicated on the merits. Turning to the third *Matosantos* factor, Mr. Garcia was a party to the prior action. *Id.* at 1207 (requiring that "(3) the party against whom the doctrine is invoked was a party, or in privity with a party to the prior adjudication"). Finally, Mr. Garcia had a full and fair opportunity in the criminal proceeding to litigate the issues. *Id.* (requiring that "(4) the party against whom the doctrine is raised had a full and fair opportunity to litigate the issue in the prior action"). In sum, applying the elements of collateral estoppel to the facts of this case, the Court concludes that Mr. Garcia is collaterally estopped from relitigating the issues determined in the prior criminal proceeding.

15

As stated above, only Mr. Garcia is collaterally estopped as to these issues, not the City Defendants.  The City Defendants argue that they were not parties or in privity with Mr. Garcia, and they did not have a full and fair opportunity to argue the issues in the criminal matter, which is correct.  [Doc. 10, pp. 7-9]  However, Counts I and II of D.G.'s *Complaint*—the only Counts on which D.G. has moved for summary judgment—are only against Defendant Garcia and not against the City Defendants.  [Doc. 1, ¶¶ 97-113]  D.G. argues that "there is little question that a finding of liability against Defendant Garcia will trigger the City's indemnification duty under Section 41-4-4 of the New Mexico Tort Claims Act."  [Doc. 12, p. 12]  However, whether the City will be required to defend and indemnify Mr. Garcia pursuant to the New Mexico Tort Claims Act is a separate question, applying separate law, from the question of whether Mr. Garcia in his individual capacity is liable for violating Plaintiff's constitutional rights.   The City has filed a cross-claim for a declaratory judgment with regard to its duties to defend and indemnify Mr. Garcia [Doc. 14, pp. 6-13], on which both parties have now filed motions. [Doc. 27; Doc. 49]  The Court does not address those motions herein.

Finally, given this determination, the Court concludes that there is no reason to allow Defendant Garcia to file a supplemental brief opposing the motion for summary judgment.  [Doc. 101]  Because collateral estoppel bars Mr. Garcia from disputing the facts he admitted by pleading guilty, he cannot now attempt to present a different factual picture in this subsequent proceeding.

### *Count I: Unreasonable Search and Seizure*

Cases in our Circuit have yet to consider the application of the Fourth Amendment to a sexual assault by an officer on a person not in custody in the typical, criminal context. It may be that the Fourth Amendment would apply under the circumstances of this case. *See City of Ontario, California v. Quon*, 560 U.S. 746, 755-56 (2010) ("It is well settled that the Fourth Amendment's protection extends beyond the sphere of criminal investigations. The Amendment guarantees the privacy, dignity, and security of persons against certain arbitrary and invasive acts by officers of the Government, without regard to whether the government actor is investigating crime or performing another function." (internal quotation marks and citations omitted)). Nonetheless, in cases similar to the one at hand, other Circuit Courts have concluded that the Fourth Amendment is not applicable. In *Jones v. Wellham*, 104 F.3d 620, 628 (4th Cir. 1997), the Fourth Circuit concluded that the Fourteenth Amendment rather than the Fourth Amendment was the correct Constitutional protection where "the harm inflicted did not occur in the course of an attempted arrest or apprehension of one suspected of criminal conduct." In *Jones*, the plaintiff was pulled over by an officer ostensibly for suspicion of driving while intoxicated. *Id.* at 622. The officer then "asked [the plaintiff] to get into his police cruiser, told her that he would not arrest her, and said that he would drive her home[,]" but instead drove her to a parking lot and raped her. *Id.* Likewise, the Second Circuit concluded that "[t]he Fourth Amendment is not the proper source of [the plaintiff's] constitutional right because [the officer's] objectionable conduct occurred outside of a criminal investigation or other form of governmental investigation or activity." *Poe v. Leonard*, 282 F.3d 123, 136 (2nd Cir. 2002). In *Poe*, a male officer solicited a female

citizen to act in a training video, and instructed the female to change to dress more provocatively and to "lose the bra." *Id.* at 139. The officer then surreptitiously recorded the female while she was changing in his office. *Id.* The Court concluded that the Fourth Amendment, which typically applies to investigatory or administrative law enforcement functions, was not applicable, and that the proper Constitutional foundation for the plaintiff's claims is found in the Fourteenth Amendment. *Id.* at 137.

Plaintiff, as the movant for summary judgment, has the burden of establishing not only that she is entitled to judgment based on the facts, but that she is entitled to judgment based on application of the *law* to the facts. Fed. R. Civ. P. 56(a) ("*The court shall grant summary judgment if the movant shows that* there is no genuine dispute as to any material fact and *the movant is entitled to judgment as a matter of law.*" (Emphasis added)). Having failed to brief the legal standard and establish its applicability to the facts at hand, Plaintiff has not met her burden in this case of establishing that the Fourth Amendment is the proper source of her constitutional claim against Mr. Garcia. Accordingly, the Court will deny Plaintiff's motion for summary judgment on this claim without prejudice.

### Count II:  Substantive Due Process and Equal Protection

Unlike Plaintiff's Fourth Amendment Claim, the law regarding her substantive due process claim and her equal protection claim has been addressed in our Circuit. As to due process, in *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013), the Court addressed a case in which a police officer sexually assaulted a woman, characterizing the conduct as a violation of the woman's "right to bodily

integrity, which is a substantive-due-process claim." *See also Maldonado v. Josey*, 975 F.2d 727, 730-31 (10th Cir. 1992) ("In the corporal punishment and sexual abuse contexts, a state actor directly inflicts the harm on the student and thereby implicates the Due Process Clause which itself imposes limitations on state conduct."); *Abeyta ex rel. Martinez v. Chama Valley Indep. Sch. Dist. No. 19*, 77 F.3d 1253, 1255 (10th Cir. 1996) ("Sexual assault or molestation by a school teacher violates a student's substantive due process rights."). These cases make it clear that in our Circuit there is a right under the Fourteenth Amendment to be free from sexual abuse and assault by a state actor. *See also Coker v. Georgia*, 433 U.S. 584, 597 (1977) (stating that rape "is highly reprehensible, both in a moral sense and in its almost total contempt for the personal integrity and autonomy of the . . . victim and for the latter's privilege of choosing those with whom intimate relationships are to be established. Short of homicide, it is the 'ultimate violation of self.'" (footnote omitted)); *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 726-27 (3d Cir. 1989) (concluding that the "the constitutional right Stoneking alleges, to freedom from invasion of her personal security through sexual abuse, was well-established" under the Due Process Clause and case law thereunder); *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 451-52 (5th Cir. 1994) ("It is incontrovertible that bodily integrity is necessarily violated when a state actor sexually abuses a schoolchild and that such misconduct deprives the child of rights vouchsafed by the Fourteenth Amendment."); *see also* Andrew J. Simmons, *Being Secure in One's Person: Does Sexual Assault Violate a Constitutionally Protected Right?*, 38 B.C.L.Rev. 1011 (1997).

Likewise, our Tenth Circuit has recognized, in a variety of circumstances, that an official's abuse of his or her position to sexually harass or sexually abuse a person can amount a violation of the Equal Protection Clause. *See Johnson v. Martin*, 195 F.3d 1208, 1211 (10th Cir. 1999) (holding that "it was clearly established that a public official could be held liable under the Equal Protection Clause for sexually harassing a private citizen" where the Director of the Building Codes and Enforcement Department sexually harassed, touched, and propositioned several women seeking building permits); *Whitney*, 113 F.3d at 1172, 1174 (holding that the plaintiff stated a claim under the Equal Protection Clause where the plaintiff alleged that the state actor harassed her and denied her a license to operate a day care facility based on her sex); *Starrett v. Wadley*, 876 F.2d 808, 814-15 (10th Cir. 1989) (holding that supervisor's sexual touching and repeated propositions toward plaintiff "can violate the Fourteenth Amendment right to equal protection of the laws").

Thus, the question before the Court is whether the undisputed facts are sufficient to establish as a matter of law that Mr. Garcia 1) acted under color of law and 2) violated either plaintiff's substantive due process rights or her right to equal protection under the law. Mr. Garcia admitted that he acted under color of law[3] and, moreover, the facts he admitted along with the undisputed facts establish that he was acting under color of law. Mr. Garcia acted as a mentor to D.G. and "worked with" Excel students such as D.G. [Doc. 9, ¶¶ 7, 13] The day of the assault, D.G. went on a ride-along to a crime scene with

---

[3] Mr. Garcia admitted that "there is a factual basis for each element of the crime[] to which the Defendant will plead guilty." [Doc. 9-3, p. 6]

Mr. Garcia.  [Doc. 9-3, pp. 3-4]  Rather than returning to the police station he drove to an isolated area and sexually assaulted D.G.  [Doc. 9-3, p. 4]  The Court concludes that the only reasonable inference from these undisputed facts is that Mr. Garcia was acting under color of law when he sexually assaulted D.G.  *See Johnson*, 195 F.3d at 1216 ("a person acts under color of state law if he exercises power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law" (internal quotation marks, citations and brackets omitted)); *compare Jojola v. Chavez*, 55 F.3d 488, 494 (10th Cir. 1995) (concluding that the plaintiff's pleadings were insufficient to claim that janitor "possessed state authority (either actual or apparent)" for purposes of making a claim that the janitor was acting under color of law when he lured a high school student into vacant classroom during the school day and sexually assaulted her).  It was only through the Excel program, in which Mr. Garcia acted as a mentor to D.G. and other students, that D.G. was with Mr. Garcia at the time he assaulted her.  [Doc. 9-3, pp. 3-4]  In other words, it was only because Mr. Garcia was "clothed with the authority of state law" that Mr. Garcia had access to D.G. and was able to assault her.  *See Johnson*, 195 F.3d at 1216.  Thus, Mr. Garcia acted under color of law when he sexually assaulted D.G.

Regarding whether Mr. Garcia violated constitutional rights, under the above case law there can be no reasonable dispute that, by sexually assaulting D.G., Mr. Garcia violated both D.G.'s right to equal protection and her substantive due process rights under the Fourteenth Amendment of the United States Constitution.  *See, e.g., Schneider*, 717 F.3d at 769; *Johnson*, 195 F.3d at 1211.  In sum, based on the undisputed facts and the facts established through application of the doctrine of collateral estoppel, Plaintiff

has established that Mr. Garcia violated her rights under the Fourteenth Amendment and has established the elements of this Section 1983 claim against Mr. Garcia.

The City Defendants make a cursory argument, citing *Dodds v. Richardson*, 614 F.3d 1185, 1202 (10th Cir. 2010), that "to succeed on any constitutional cause of action against the City for Garcia's actions, Plaintiff must document more than an employment relationship, she must prove Garcia violated the Constitution and an 'affirmative link' between the City's policies and that violation." [Doc. 10, pp. 7-8] While that is true in the case of an action brought against a state actor in his or her official capacity,[4] D.G. only purports to bring this claim against Mr. Garcia in his individual capacity. [Doc. 1, caption]

> Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. . . . On the merits, to establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right. More is required in an official-capacity action, however, for a governmental entity is liable under § 1983 only when the entity itself is a moving force behind the deprivation, . . . thus, in an official-capacity suit the entity's policy or custom must have played a part in the violation of federal law.

*Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (internal quotation marks, citations and footnote omitted). Because D.G. only brings a personal capacity suit against Mr. Garcia, she need not establish any official policy or affirmative link between such policy and Mr. Garcia's actions.

---

[4] "Official-capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (internal quotation marks and citation omitted).

Plaintiff has established as a matter of law both that Mr. Garcia was a state official acting under color of state law, and that he violated her constitutional rights under the Fourteenth Amendment.  Plaintiff is entitled to summary judgment on Count II against Mr. Garcia in his individual capacity.

**CONCLUSION**

**IT IS THEREFORE HEREBY ORDERED** that *Plaintiff's Motion for Summary Judgment on Counts I and II of Her Complaint Which Allege Violations of her Fourth and Fourteenth Amendment Rights by Defendant Michael Garcia* [Doc. 9] is **GRANTED-IN-PART** and **DENIED-IN-PART** as follows:

1)      Plaintiff's Motion is **DENIED** with regard to Count I of her Complaint; and

2)      Plaintiff's Motion is **GRANTED** with regard to Count II of her Complaint.

**IT IS SO ORDERED** this 25th day of March, 2015 in Albuquerque, New Mexico.


_____
M. CHRISTINA ARMIJO
Chief Judge, United States District Court

23