# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

D.G.,

     **Plaintiff,**

v.                                **No. 14-CV-368 MCA/WPL**

THE CITY OF LAS CRUCES, a
municipality in the State of New Mexico;
Former City of Las Cruces Police Chief
HARRY ROMERO and Former City of
Las Cruces Police Chief RICHARD
WILLIAMS, and MICHAEL GARCIA,
in his individual capacity,

     **Defendants.**

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** is before the Court on the following motions:  *Defendant City of Las Cruces' Motion for Partial Summary Judgment on Count I of its Crossclaim* [Doc. 27]; *D.G.'s Motion for Judgment on the Pleadings Seeking Dismissal of Count I of the City of Las Cruces' Cross Claim Asserted Against Defendant Michael Garcia* [Doc. 51]; the City of Las Cruces' *Motion for Partial Summary Judgment on Count[s] I & II of Plaintiff's Complaint*, [Doc. 81]; *Defendant City of Las Cruces' Opposed Motion for Leave to File Supplemental Exhibit* [Doc. 115]; *Defendant Michael Garcia's Motion for Summary Judgment on Defendant City of Las Cruces' Crossclaim* [Doc. 156]; and *D.G.'s Motion for Summary Judgment on Count I of the City of Las Cruces' Crossclaim Against Defendant Michael Garcia* [Doc. 155].  The Court has considered the submissions, the relevant case law, and has otherwise been fully informed in the premises.

1

I.    **BACKGROUND**

  A.  *Factual Background*

On April 17, 2014 Garcia was charged with and pleaded guilty to "Deprivation of rights under color of law" under 18 U.S.C. § 242.  [Doc. 9, ¶ 24]  Garcia described his actions under oath in "Defendant's Admission of Facts" in his Plea Agreement:

> I formerly worked as a detective in the Las Cruces Police Department where I focused on sex crimes and child abuse investigations.  In my capacity as detective, I worked with students who participated in Las Cruces High School's Excel program by interning at the Las Cruces Police Department.  D.G. was one of those students.  On or about May 4, 2011, D.G. accompanied me on a ride-along in my department-issued vehicle. After visiting a crime scene, instead of driving D.G. directly back to the police department so that she could retrieve her belongings and go home, I drove down isolated side streets into a secluded neighborhood that was still under construction.  I then pulled the car over, reached over to D.G., who was in the passenger seat, and I unbuttoned her jeans.  I then put my hand in D.G.'s underwear and used my fingers to penetrate her vagina.  As a result, D.G. experienced pain.  I then unzipped my own pants and grabbed D.G.'s hand and placed it on my penis, forcing her to stroke my penis. When I touched D.G. and then when I made her touch me, I knew it was against the law and that D.G. did not want me to do it, but I did it anyway. I admit that this was a willful violation of D.G. (*sic*) constitutional rights, and more specifically, a violation of her right to be free from unreasonable seizure.

[Doc. 9-3, pp. 5-6]  The Court adjudicated Garcia guilty.  *United States v. Garcia*, No. 14-CR-1251-NF, Doc. 23 (D.N.M. Nov. 25, 2014).  Plaintiff D.G. was 17 years old when Garcia sexually assaulted her.  [Doc. 28, ¶ 11; Doc. 40, p. 2]

The City of Las Cruces contends that it did not request, require or authorize Garcia to sexually assault Plaintiff, and therefore argues that Garcia was not acting in the scope of his duties when he sexually assaulted Plaintiff.  [Doc. 164, p. 9]  The City thus asserts that it has no duty to defend Garcia or satisfy a judgment against him.  To support its

argument, the City sets out the following facts, which are undisputed.  [Doc. 181, p. 3]

No one with the City requested, required or authorized Garcia to sexually assault

Plaintiff.  [Doc. 164, ¶ C]  Garcia was aware that the City of Las Cruces' 2010 Personnel

Manual stated that an employee could "not use his/her position to coerce or abuse another

person."  [Doc. 164, ¶ B]  The 2010 Personnel Manual did not allow any employee to

"harass, discriminate or retaliate against any other employee or citizen."  [Doc. 164, ¶ D]

Garcia understood that City policy forbid him from harassing, discriminating or

retaliating against Plaintiff.  [Doc. 164, ¶ E]  The Las Cruces Police Department Code of

Conduct required officers, including Garcia, to act responsibly both on and off duty.

[Doc. 164, ¶ F]  This Code of Conduct prohibited Garcia from violating Plaintiff's

constitutional rights.  [Doc. 164, ¶ I]  No one at the City of Las Cruces authorized,

required or requested Garcia to violate Plaintiff's constitutional rights.  [Doc. 164, ¶ J]

Garcia admits that he was not required, requested or authorized by his job to touch the

breasts of a minor, unbutton her pants, or put his hands down her pants.  [Doc. 164, ¶¶ M,

N]  Garcia acknowledges that sexually assaulting a 17 year-old in his police vehicle was

contrary to law, specifically, what Garcia called the "position-of-authority statute."  [Doc.

164, ¶ L]

## B.  *Procedural Background*

The day after Defendant Garcia pleaded guilty, Plaintiff filed her Complaint in this

case.  [Doc. 1]  Plaintiff pleaded four Counts: Count I against Garcia only for a violation

of Plaintiff's Fourth Amendment rights; Count II against Garcia only for violation of her

rights to substantive due process and equal protection under the Fourteenth Amendment;

Count III against the City of Las Cruces[1] for violation of Plaintiff's Fourteenth Amendment Substantive Due Process and Equal Protection Rights; and Count IV against the City of Las Cruces for Municipal Liability.[2]  [Doc. 1, pp. 12-20]

The City of Las Cruces filed a Crossclaim against Michael Garcia seeking the following:  Count I, a declaratory judgment stating that the City of Las Cruces has no duty to defend Garcia or pay for a judgment against him pursuant to NMSA 1978, § 41-4-4 (2001); and Count II, a judgment against Michael Garcia for recovery of all amounts it expends defending Garcia and satisfying any judgment against him.  [Doc. 14, pp. 10-13]

Largely relying on the doctrine of collateral estoppel, Plaintiff moved for summary judgment on her first and second counts against Garcia.  [Doc. 9]  This Court denied Plaintiff's motion for summary judgment with regard to Count I, Plaintiff's claim against Garcia in his individual capacity for violation of her right to be free from unreasonable seizure and excessive force under the Fourth Amendment.  [Doc. 119, p. 23; Doc. 1, ¶¶ 97-113]  Based on principles of collateral estoppel, the Court granted Plaintiff's motion for summary judgment with regard to Count II, Plaintiff's claim against Garcia in his individual capacity for violation of her substantive due process and equal protection rights.  [Doc. 119, p. 23; Doc. 1, ¶¶ 97-113]  In reviewing Plaintiff's motion for summary judgment, the Court stated that it was not deciding the claims the City brought in its

---

[1] Plaintiff also filed Count III against two Former Police Chiefs for the City of Las Cruces, but those claims have been dismissed.  [Doc. 34]

[2] Counts III and IV of Plaintiff's Complaint are not addressed in the Motions considered herein.

Crossclaim, particularly the issue of whether the City would be required to defend Garcia and pay a judgment issued against him.  [Doc. 119, p. 16]

The parties have now filed 11 motions, not including motions pertaining to discovery or trial procedure or motions in limine.  Herein the Court addresses 6 of these motions, described further below.

## II.   ANALYSIS

### A. *Standard for Summary Judgment*

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).  Once the movant meets this burden, the non-moving party is required to put in the record facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); Fed. R. Civ. P. 56(c).

"A fact is 'material' if, under the governing law, it could have an effect on the outcome of the lawsuit.  A dispute over a material fact is 'genuine' if a rational jury could find in favor of the nonmoving party on the evidence presented."  *Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008) (internal citations omitted).

The trial judge is not to weigh the evidence to determine the truth of the matter, but instead must ask "whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." [*Liberty Lobby*, 477 U.S.] at 252, 106 S.Ct. at 2512. In making the decision, the trial judge must consider all the evidence in the light most favorable to the nonmoving party. *Redhouse v. Quality Ford Sales, Inc.*, 511 F.2d 230, 234 (10th Cir.1975). Thus, the trial judge must deny motions for summary judgment when reasonable jurors might disagree, even though the judge as trier of fact would find for the moving party.

*Dreiling*, 850 F.2d at 1377.

**B.**   ***Garcia's Motion For Summary Judgment on City's Crossclaim [Doc. 156]***

As stated above, in its Crossclaim against Defendant Garcia, the City seeks a judgment declaring that it does not have to defend or pay a judgment against Garcia pursuant to the New Mexico Tort Claims Act, particularly NMSA 1978, § 41-4-4.[3] [Doc. 14, ¶¶ 28-31]   Sections 41-4-4(B) and (D), respectively, require the state and its governmental entities to defend and to pay judgments against public employees who are "acting within the scope of [their] duty."   Garcia moves for summary judgment, arguing that based on the undisputed material facts, the only conclusion that can be drawn is that he was acting in within the scope of duty.   [Doc. 156, pp. 6-7]   He argues that the analysis of the scope of duty inquiry is similar to the analysis the Court already applied to determine whether Garcia was acting under color of law.   [Doc. 156, p. 8]   He further argues that under case law from the State of New Mexico construing Sections 41-4-4(B) and (D), the inquiry is not whether the City requested, required or authorized him to

---

[3]   Alternatively, the City seeks recovery from Garcia of "all amounts it expends in providing a defense for him and/or paying damages on his behalf pursuant to NMSA 1978, § 41-4-4(E)."   [Doc. 14, ¶¶ 32-34]   Garcia does not discuss this request for relief in his Motion for Summary Judgment.   [Doc. 156]

sexually assault Plaintiff, but whether a connection exists between the duties Plaintiff was requested, required or authorized to perform and his tortious and criminal conduct.  *See Risk Mgmt. Div., Dep't of Fin. & Admin. v. McBrayer*, 2000-NMCA-104, 129 N.M. 778, 14 P.3d 43; *Celaya v. Hall*, 2004-NMSC-005, 135 N.M. 115, 85 P.3d 239.  [Doc. 156, pp. 9-10]

The City responds that neither the law of the case nor collateral estoppel can be used to reach the conclusion that Garcia was acting within the scope of his duties [Doc. 164, p. 7], and that Garcia violated City policy by sexually assaulting Plaintiff and therefore he was not acting in the scope of his duties.  [Doc. 164, pp. 9-11; Doc. 28, pp. 8-14]  According to the City, "Garcia ceased working in the scope of his duty the moment he removed his gun and badge and drove Plaintiff to an isolated neighborhood to avoid detection and criminally brutalized her instead of returning her to the police station as he was requested, required, and authorized to do."  [Doc. 28, p. 11]  The City argues that, because Garcia violated City and Department policies by assaulting Plaintiff he was acting outside of his scope of duties.  [Doc. 28, p. 11-12]  The City argues that there is no nexus between Garcia's criminal acts and his governmental authority, and therefore the City cannot be liable.  [Doc. 28, p. 14]  And finally, the City argues that Garcia's demand for the City to pay any judgment against him was untimely, and thus it cannot be liable. [Doc. 28, p. 17-19]

The New Mexico Tort Claims Act waives immunity for enumerated acts by "any public employee while acting within the scope of duty."  NMSA 1978, § 41-4-4(A).  The

7

duties of the government to defend public employees and pay judgments against public

employees are delineated as follows:

> B. . . . a governmental entity shall provide a defense, including costs and attorney fees, for any public employee when liability is sought for:
>
> . . .
>
> (2) any violation of property rights or any rights, privileges or immunities secured by the constitution and laws of the United States or the constitution and laws of New Mexico when alleged to have been committed by the public employee while acting within the scope of his duty.
>
> . . .
>
> D. A governmental entity shall pay any settlement or any final judgment entered against a public employee for:
>
> . . .
>
> (2) a violation of property rights or any rights, privileges or immunities secured by the constitution and laws of the United States or the constitution and laws of New Mexico that occurred while the public employee was acting within the scope of his duty.

Section 41-4-4.  An employee's scope of duty is defined as "performing any duties that a

public employee is requested, required or authorized to perform by the governmental

entity, regardless of the time and place of performance."  NMSA 1978, § 41-4-3(G)

(2009) (subsequently amended 2013, 2015).  Further, the Act sets forth a right of

recovery under certain circumstances:

> E. A governmental entity shall have the right to recover from a public employee the amount expended by the public entity to provide a defense and pay a settlement agreed to by the public employee or to pay a final judgment if it is shown that, while acting within the scope of his duty, the public employee acted fraudulently or with actual intentional malice causing the bodily injury, wrongful death or property damage resulting in the settlement or final judgment.

*Id.* The limit of the right of recovery is then defined further in NMSA 1978, § 41-4-17(A) (1982), which states:

> [A] governmental entity or any insurer of a governmental entity shall have no right to contribution, indemnity or subrogation against a public employee unless the public employee has been found to have acted fraudulently or with actual intentional malice causing the bodily injury, wrongful death, property damage or violation of rights, privileges or immunities secured by the constitution and laws of the United States or laws of New Mexico resulting in the settlement or final judgment.

The New Mexico Court of Appeals has construed these provisions in multiple cases. *See, e.g., Seeds v. Lucero*, 2005-NMCA-067, 137 N.M. 589, 113 P.3d 859 ("Plaintiffs misunderstand the scope of duty concept when they argue that the critical question is whether the City Defendants were motivated solely by personal concerns or whether they were working with a view toward furthering the City's interests." (internal quotation marks and brackets omitted)); *Medina v. Fuller*, 1999-NMCA-011, ¶¶ 4, 28, 29, 126 N.M. 460, 971 P.2d 851 (concluding as a matter of law that a deputy sheriff, driving home in department vehicle, who was on call 24/7, was acting in the scope of her duties at the time of automobile accident based on the department on-call policy and the fact that she had not called in that she was home).

In *McBrayer*, the Court addressed a sexual assault of a university student by a university instructor. 2000-NMCA-104, ¶ 2. In *McBrayer,* the student had missed several assignments due to pregnancy, but asked permission from her instructor to make up the assignments. *Id.* ¶ 3. The instructor first told the student that the assignments were in his car, and then, when the assignments were not there, he said that they were at

9

his apartment and they could stop and get them and then go to the copy store.  *Id.* ¶ 3. The student went to the instructor's apartment and waited in the front doorway while the instructor retrieved the assignments.  *Id.* ¶ 4.  He then returned, grabbed the student, held a stun gun to her neck, struggled with her, subdued her, sexually assaulted and tortured her, and tried to kill her.  *Id.*  He was convicted of "kidnaping, criminal sexual penetration, attempted murder, and criminal sexual contact."  *Id.*  Subsequently, the student sued the instructor under 42 U.S.C. § 1983 for violation of her constitutional rights.  *Id.* ¶ 5.  While that suit was pending, the State's Risk Management Division (RMD) filed suit for a declaratory judgment stating that it did not have to defend the instructor or pay damages.  *Id.*

The RMD argued that "the state could never be liable for the criminal act of an employee because criminal acts would never be requested, required or authorized."  *Id.* ¶ 14.  The Court looked at the entire structure of the Tort Claims Act and determined that, if the RMD's argument were accepted, it would be illogical for the legislature to have "empowered the state, not once but twice, to recover its defense and liability costs from the employee for having committed those very same, criminal acts."  *Id.* ¶¶ 11-14 (citing Sections 41-4-4(E) and 41-4-17(A)).  The Court stated:

> Under the law of indemnification, the state would have a right to recover its expenditures only when it was free from fault. Conversely, the state could not become indemnified against its employee, if it actually requested, required or authorized the performance of intentional, malicious, even criminal acts. Thus, the state's right to indemnification, premised on its innocent behavior, is incompatible with RMD's notion that the state must first participate in the wrongdoing by authorizing an employee's wrongful acts before there can be coverage under the TCA.

Therefore, the reasonable inference drawn from Sections 41–4–4(E) and 41–4–17(A), the one that gives these sections their full meaning, is that the legislature likely foresaw the possibility that a public employee could abuse the duties actually requested, required or authorized by his state employer and thereby commit malicious, even criminal acts that were unauthorized, yet incidental to the performance of those duties. And it is equally likely that the legislature intended that those unauthorized acts would fall within the scope of duties as defined in the TCA. On the other hand, under RMD's view of the scope of duty, the legislature would require the state to request or authorize criminal *acts* as a prerequisite to providing a defense and paying a judgment, which is an absurdity in our view.

*Id.* ¶¶ 16, 17 (emphasis in original).

The *McBrayer* Court looked not only at the legislative text but also considered a series of amendments to the state's duties to defend and pay judgments. *Id.* ¶¶ 21-23. The Court explained that originally "the TCA left public employees, with the exception of law enforcement officers, personally responsible for torts committed with malice or fraud." *Id.* ¶ 22. Subsequently, the legislature amended the act so as not to make "the employee bear sole responsibility for civil rights violations and other forms of intentional, malicious conduct, and . . . [leave] the victim uncompensated if the employee were judgment proof." *Id.* ¶ 21. The Court thus concluded that "the legislature did not arrive capriciously at its decision (1) to assume the burden of compensating victims for civil rights damages caused by public employees, and (2) to allocate the risk of loss between the state and its employees, not the state and victims." *Id.* ¶ 23.

The *McBrayer* Court concluded that the professor's acts were not "excluded simply because they [we]re criminal." *Id.* ¶ 19. Further, the Court was not persuaded by RMD's argument that the university's "internal policies against sexual harassment" could "be construed to control the state's obligations under the TCA." *Id.* ¶ 27. And finally,

11

the Court critically defined the proper question: "[W]hether the criminal acts were done while [the employee] was acting within his scope of duty: *while performing a duty that he was requested, required or authorized to perform by NMSU*." *Id.* ¶ 19 (Emphasis added).

Subsequently, the New Mexico Supreme Court summarized the law regarding whether an employee of the State is acting within the scope of his or her duties in *Celaya*, 2004-NMSC-005, ¶¶ 22-26. In *Celaya*, a sheriff's department volunteer chaplain was driving his department issued vehicle while on a personal errand at a store. *Id.* ¶¶ 3, 4. While in the parking lot, he drove over the foot of a store employee. *Id.* ¶ 2. The Court held that the question is whether there is "a connection between the public employee's actions at the time of the incident and the duties the public employee was 'requested, required or authorized' to perform." *Id.* ¶ 26. The Court stated that "a minor deviation in the form of an incidental personal errand, does not take [the employee] outside the scope of his official duties." *Id.* The Court applied *McBrayer*'s refusal "to limit 'scope of duties' to only those *acts* officially requested, required or authorized because, contrary to legislative intent, it would render all unlawful acts, which are always unauthorized, beyond the remedial scope of the TCA." *Id.* ¶ 25. The Court agreed with *McBrayer*'s conclusion that "excluding all unauthorized criminal or tortious acts by public employees is irreconcilable with the indemnification provisions of the TCA." *Id.* ¶ 25.

*Celaya* further concluded that "[w]hether an employee is acting within the scope of duties is a question of fact, and summary judgment is not appropriate unless only one reasonable conclusion can be drawn from the facts presented." *Id.* ¶ 28 (internal

quotation marks and citation omitted).  In *Celaya*, the chaplain did not recall where he was coming from at the time he ran over the store employee's foot, but he did state that he only drove the department vehicle when performing chaplain duties for the Department.  *Id.* ¶ 27.  Thus, given that the chaplain presented habit evidence as to whether he was performing duties for the Department, the Court held that there was a question of fact as to whether he was acting in the scope of his employment.  *Id.*

Applying this case law from New Mexico easily resolves the City's arguments.[4] The City argues that it never required, requested, or authorized Garcia to sexually assault Plaintiff.  [Doc. 164, p. 10]  *McBrayer* rejected this exact argument and concluded that the inquiry is not whether the criminal or tortious act was requested, required or authorized, but whether the criminal or tortious act was conducted while the public employee was "performing a duty that he was requested, required or authorized to perform."  *McBrayer*, 2000-NMCA-104, ¶ 19.  Likewise, *McBrayer* rejected the argument that the employer could avoid statutory liability by creating a policy against the tortious or criminal conduct.  *Id.* ¶ 27.  Subsequently the New Mexico Supreme Court agreed with *McBrayer*'s analysis.  *Celaya*, 2004-NMSC-005, ¶¶ 25, 26.  This Court does so as well, because it "must attempt to resolve the issue as the New Mexico Supreme Court would."  *Oliveros v. Mitchell*, 449 F.3d 1091, 1094 (10th Cir. 2006).  Additionally, the Tort Claims Act so clearly precludes the City's argument that, even if the Court were

---

[4] The Court does not apply either the law of the case or collateral estoppel to reach its determination regarding whether Garcia was acting within the scope of his duties.

to consider Section 41-4-4 without the benefit of *McBrayer* and *Celaya*, the Court would reach the same conclusion.

Given that the inquiry is not whether the City requested, required or authorized Garcia to sexually assault Plaintiff, it is immaterial that City and Las Cruces Police Departments forbid officers from, *inter alia*: misusing City property; using their position of authority to coerce or abuse others; sexually assaulting anyone; engaging in personal conduct which interferes with other employee's duties; harassing, discriminating or retaliating against other employees; and creating the appearance of impropriety. [Doc. 28, ¶¶ 3b, 3e, 3f, 3g, 3h, 4, 5, 6] Nor are the policies requiring officers to remain at their designated work place and requiring officers to deal with the public and co-workers in a courteous and professional manner sufficient to take Garcia's acts outside the scope of his duty. [Doc. 28, ¶¶ 3a, 3c] Instead, the question is whether Garcia sexually assaulted Plaintiff while he was "performing a duty that he was requested, required or authorized to perform." *McBrayer*, 2000-NMCA-104, ¶ 19. Alternatively stated by *Celaya*, the question is whether there is "a connection between the public employee's actions at the time of the incident and the duties the public employee was 'requested, required or authorized' to perform." *Celaya*, 2004-NMSC-005, ¶ 26.

Having framed the inquiry, the Court must look at the facts pertaining to that inquiry. The City of Las Cruces and the Las Cruces Public Schools have entered into a Memorandum of Understanding which requires the City to "provide on-the-job supervision" to Excel students. [Doc. 40, ¶ H] In addition, an officer supervising a student who was riding along was required to "maintain control over the ride-in at all

times." [Doc. 40, ¶ E]  On May 4, 2011, Plaintiff was assigned to and did go on a ride along with Garcia to a homicide scene in his unmarked police vehicle. [Doc. 28, ¶¶ 13, 14]  The two spent about an hour at the crime scene.  [Doc. 28, ¶ 14]  At some point, either before working the homicide scene or before leaving the homicide scene, Garcia removed his handgun and badge and placed them on the middle console in the vehicle. [Doc. 28, ¶ 15; Doc. 40, ¶ 15]  Instead of returning Plaintiff to the police station, Garcia, still charged with the duty to supervise Plaintiff, drove Plaintiff to an uninhabited neighborhood.  [Doc. 28, ¶ 16]   There in his police vehicle in the uninhabited neighborhood, Garcia sexually assaulted Plaintiff.  [Doc. 28, ¶¶ 18, 19]  Afterward, he drove Plaintiff back to the police station.  [Doc. 28, ¶ 20]

Garcia was working during his duty day.  Garcia was in his department issued vehicle and had just finished a work related assignment, all-the-while supervising Plaintiff.  While at the crime scene, or immediately upon leaving, he made the decision to drive to the secluded area to engage in sexual acts with Plaintiff, and then he followed through on that decision.  Had Plaintiff not been under Garcia's supervision as his ride-along, there might be a fact question as to whether he was acting within the scope of his duties.  However, Garcia was requested, required and authorized to supervise Plaintiff and maintain control of her.  [Doc. 28, ¶¶ 13-14; Doc. 28, pp. 10-11; Doc. 40-2, p. 3; Doc. 40-4, p. 2]  It was due to Garcia's duty to supervise Plaintiff that she was with him from the moment that they left the police station to the moment they returned.  [Doc. 28, pp. 10-11]  The reason he was able to assault Plaintiff is because she was with him and under his supervision, establishing the requisite connection between Garcia's duties and

his assault of Plaintiff. Further, to the extent that the City argues that Garcia was on a "frolic" because his "duty was to return Plaintiff to the Department" [Doc. 164, p. 11], the City fails to focus on the dispositive duty here: Garcia's duty to supervise Plaintiff, as requested required and authorized by the City.[5] At no time before returning Plaintiff to the police station did Garcia cease to supervise Plaintiff.

In *Medina*, the Court concluded as a matter of law that a deputy who was driving home was acting in the scope of her duties because, *inter alia*, she was both temporally on-duty and authorized by her employer to use her vehicle to drive home at the time she was involved in a motor vehicle accident. *Medina*, 1999-NMCA-011, ¶¶ 28, 29. Here, Garcia was on duty and Garcia was requested, required and authorized to supervise Plaintiff, regardless of whether he drove to a neighborhood rather than directly to the police department. The Court concludes that, as in *Medina*, on the undisputed facts no reasonable jury could conclude that Garcia was not acting in the scope of his duties at the time he sexually assaulted Plaintiff, and therefore, the Court concludes that Garcia was acting in the scope of his duties as a matter of law.

Nonetheless, before the Court concludes that it can grant summary judgment for Garcia, however, the Court must consider additional legal issues raised by the City in its

---

[5] In addition, the purported "duty" to return Plaintiff to the station is not factually supported by Defendant, as none of the policies cited are a requirement to return a ride-along directly to the station after visiting a crime scene. [Doc. 164 p. 9; Doc. 28, ¶ 3] The closest requirement is that employees are required to remain "at their designated work place" and not to leave early. [Doc. 28, ¶ 3(a)] Even assuming Garcia violated this policy, this violation did not terminate his duty to supervise Plaintiff.

Motion for Partial Summary Judgment on Count I of its Crossclaim, to which the Court turns next.

### C. *Defendant City of Las Cruces' Motion for Partial Summary Judgment on Count I of its Crossclaim [Doc. 27]* **and** *Defendant City of Las Cruces' Opposed Motion for Leave to File Supplemental Exhibit [Doc. 115]*

The City filed a Motion for Summary Judgment on Count I of its Crossclaim against Garcia.  [Doc. 27]  The City's arguments fall into three categories:  1) arguments that Garcia was not acting in the scope of his duties at the time he injured Plaintiff [Doc. 28, pp. 8-14]; 2) that it is entitled to summary judgment because Garcia did not demand a defense and payment of judgment within the TCA's two-year statute of limitations; [Doc. 28, pp. 17-19]; and 3) that Plaintiff cannot prove that Garcia was acting under color of state law.  [Doc. 28, pp. 14-17]  The Court already addressed and rejected the City's first category of arguments by concluding, above, that as a matter of law Garcia was acting within the scope of his duties.  Thus, the Court considers the City's second and third arguments herein.

The New Mexico Tort Claims Act includes a two-year statute of limitation for torts committed by public employees:  "Actions against a governmental entity or a public employee for torts shall be forever barred, unless such action is commenced within two years after the date of occurrence resulting in loss, injury or death[.]"  NMSA 1978, § 41-4-15(A) (1977).  Based on this provision, the City argues that Garcia's demand that it pay any judgment against him was untimely.  [Doc. 28, p. 17-19]

Garcia deprived Plaintiff of her constitutional rights on May 4, 2011.  Plaintiff filed her lawsuit, alleging only violations of her civil rights (rather than any torts) more

than two years later, on April 18, 2014.  According to the City, Garcia first clearly demanded that the City defend him and pay any judgment entered against him on July 16, 2014, when he answered the City's Crossclaim.[6]  [Doc. 28, p. 19]  The City states: "[A]lthough concededly Plaintiff's claim under [§] 1983 is timely because the federal constitutional violations [borrow] New Mexico's three-year personal injury limitations period, . . . Garcia's entitlement to a taxpayer funded defense is subject to the NMTCA's strict two-year statute."  [Doc. 28, p. 19]  The City concedes that there is no New Mexico case law addressing its argument, and suggests that this Court certify the issue to the New Mexico Supreme Court.  [Doc. 28, p. 18 n.3]

Garcia responds by arguing that, *inter alia*, under the statutory language of the Tort Claims Act, the "governmental entity shall provide a defense" and "shall pay any settlement or any final judgment."  Section 41-4-4(B), (D).  [Doc. 40, p. 20]  However, there is no language requiring the employee to demand a defense or that the government pay any judgment against the employee.  [Doc. 40, p 20]  Garcia also argues that the statute of limitations only applies to torts, and not "to a demand for a defense or indemnity even if such a duty were placed upon public employees, which it is plainly not."  [Doc. 40, p. 21]  Garcia also points out that the City's arguments fails logically because no duty to defend or pay for a judgment exists until after the Plaintiff files a claim, and thus no purported timeline for making a demand to defend or indemnify could

---

[6] This argument is inconsistent with the City's previously filed Answer and Crossclaim, which states:  "Garcia has demanded that the City provide him a defense in this matter and pay any settlement and/or damages arising from his conduct as alleged in Plaintiff's complaint."  [Doc. 14, ¶ 30(a)]

begin to run until after the lawsuit was filed.  [Doc. 40, pp. 21-22]  Plaintiff responds

with generally the same arguments as Garcia.  [Doc. 41, pp. 41-42]

> There is no need to certify this argument to the New Mexico Supreme Court.
>
> "[C]ertification is not to be routinely invoked whenever a federal court is presented with an unsettled question of state law." *Armijo v. Ex Cam, Inc.*, 843 F.2d 406, 407 (10th Cir.1988). "Absent 'some recognized public policy or defined principle guiding the exercise of the jurisdiction conferred,' federal courts bear a duty to decide questions of state law when necessary to render a judgment." *Kan. Judicial Review v. Stout*, 519 F.3d 1107, 1119 (10th Cir.2008) (quoting *Copier* [*ex rel. Lindsey v. Smith & Wesson Corp.*, 138 F.3d 833, 838 (10th Cir. 1998)]. Indeed, "under the diversity statutes the federal courts have the duty to decide questions of state law even if difficult or uncertain." *Copier*, 138 F.3d at 838. Thus, "we apply judgment and restraint before certifying," and "will not trouble our sister state courts every time an arguably unsettled question of state law comes across our desks." *Pino* [*v. United States*, 507 F.3d 1233, 1236 (10th Cir. 2007)]. "When we see a reasonably clear and principled course, we will seek to follow it ourselves." *Id*.

*Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1235-36 (10th Cir. 2012).  Here, the course is

reasonably clear.  The Court agrees with Garcia and Plaintiff that there is no language in

the Tort Claims Act requiring the employee to demand a defense or that the governmental

entity pay the judgment entered against him or her.  Rather, the statute says that the

governmental entity "shall" provide a defense and pay for any judgment.  Section 41-4-

4(B), (D).  Further, the government's duty to defend and pay for judgments cannot arise

until a claim is filed.  Were the Court to accept the City's argument, the result would be

to carve out an implicit exception to the government's express duties to defend and pay

judgments for the class of claims for deprivation of constitutional rights, timely brought

before the three-year statute of limitations, *Wilson v. Garcia*, 471 U.S. 261, 280 (1985)

(holding that Section 1983 claims must be brought within three years in New Mexico),

but after the non-applicable two-year statute of limitations governing torts passed.  The Court cannot conclude that the legislature intended to create this purported exception to the express duties to defend and pay judgments by silence.  Nor will the Court "read into a statute or ordinance language which is not there, particularly if it makes sense as written." *Regents of Univ. of N.M. v. N.M. Fed'n of Teachers*, 1998-NMSC-020, 125 N.M. 401, 962 P.2d 1236; *c.f. Contreras-Bocanegra v. Holder*, 678 F.3d 811, 817 (10th Cir. 2012) ("As a general principle of statutory interpretation, if a statute specifies exceptions to its general application, other exceptions not explicitly mentioned are excluded." (internal quotation marks and citations omitted)).

Finally, the Court rejects the City's third argument for summary judgment, that it should be granted summary judgment because Garcia was not acting under color of law, [Doc. 28, pp. 14-17] on two grounds.  First, as discussed in this Court's previous *Memorandum Opinion and Order* (which already determined that Garcia was acting under color of law), the determination that Garcia was acting under color of law is a separate inquiry from whether the City has a duty to defend Garcia and pay any judgment rendered against Garcia.  [Doc. 119, p. 16]  Whether Garcia was acting under color of law is pertinent to Plaintiff's claims under Section 1983, but irrelevant to the City's Crossclaim under Section 41-4-4, which turns on the distinct inquiry of whether Garcia was acting in the scope of his duty.  Thus, the question of whether Garcia was acting under color of law is only relevant to Counts I and II of Plaintiff's complaint, and these claims are only against Garcia and not against the City.

Second, even assuming the City can challenge an element of a claim not brought against it, the City has failed to present facts upon which the Court could grant summary judgment in its favor on the question of whether Garcia was acting under color of law. The City has offered no alternative fact pattern about what occurred during Garcia's sexual assault of Plaintiff, and generally cites Garcia's plea agreement or Plaintiff's complaint in discussing the facts of the assault. The only additional facts to which the City points are the policies of the City and Las Cruces police department, but these polices are not relevant to whether Garcia is liable in his individual capacity, the only claim made by Plaintiff in her first and second counts.[7]   Thus, as stated in its prior *Memorandum Opinion and Order*, the Court remains convinced that:

> It was only through the Excel program, in which Mr. Garcia acted as a mentor to D.G. and other students, that D.G. was with Mr. Garcia at the time he assaulted her. [Doc. 9-3, pp. 3-4] In other words, it was only because Mr. Garcia was "clothed with the authority of state law" that Mr. Garcia had access to D.G. and was able to assault her. *See Johnson*, 195 F.3d at 1216. Thus, Mr. Garcia acted under color of law when he sexually assaulted D.G.

[Doc. 119, p. 21]

In sum, the Court rejects all grounds for summary judgment in *Defendant City of Las Cruces' Motion for Partial Summary Judgment on Count I of its Crossclaim*, and therefore denies the City's Motion. [Doc. 27]  Given that the City's arguments were not persuasive, the Court also concludes that Garcia's Motion for Summary Judgment [Doc. 156] must be granted as to Count I.

---

[7] Plaintiff makes a claim for municipal liability against the City in Count IV of her Complaint, which is the subject of a separate motion for summary judgment [Doc. 147], which the Court addresses separately.

In addition, the Court denies *Defendant City of Las Cruces' Opposed Motion for Leave to File Supplemental Exhibit* [Doc. 115] to its Motion for Summary Judgment [Doc. 27].  The proposed additional exhibit is a portion of Michael Garcia's deposition which he admits that he was aware of City policies against using his position to coerce or abuse another person, against discriminating or retaliating against employees or citizens, and other policies generally forbidding his sexual assault of Plaintiff.  [Doc. 115, ¶¶1-14] In his deposition he also admits that no one at the City requested, required, or authorized him to sexually assault Plaintiff, and that he knew it was against the law for him to do so. [Doc. 115, ¶¶ 3, 10-14]  As stated above in Section II.B., these facts do not change the analysis of whether Garcia was acting within the scope of his duty.  Accordingly, the City's Motion to Supplement [Doc. 115] is denied.

**D.** ***D.G.'s Motion for Judgment on the Pleadings Seeking Dismissal of Count I of the City of Las Cruces' Cross claim Asserted Against Defendant Michael Garcia* [Doc. 51] *and D.G.'s Motion for Summary Judgment on Count I of the City of Las Cruces' Crossclaim Against Defendant Michael Garcia* [Doc. 155]**

Though the City did not name Plaintiff as a party to its Crossclaim against Michael Garcia, [Doc. 14, pp. 10-14], Plaintiff moves for judgment on the pleadings [Doc. 51] and for summary judgment [Doc. 155] on Count I of the City's Crossclaim against Garcia.

In her Motion for Judgment on the Pleadings, Plaintiff requests this Court "to dismiss Defendant City of Las Cruces' crossclaims asserted against Defendant Michael Garcia pursuant to Federal Rule of Civil Procedure 12(c)."  [Doc. 51, p. 15]  The parties argue over many procedural questions in the briefing on the Motion for Judgment on the Pleadings, including:  whether Plaintiff has standing to file such a motion [Doc. 53, pp. 3-

7; Doc. 62, p. 3]; whether *Brillhart* abstention should apply given that Plaintiff filed a declaratory judgment action in state court[8] [Doc. 51, pp. 4-11; Doc. 53, pp. 7-11; Doc. 62, pp. 3-7]; and whether the Court should consider the issue of whether Garcia was acting under color of law [Doc. 51, pp. 11-15; Doc. 53, p. 11].   However, given the Court's ruling above that Garcia is entitled to judgment as a matter of law that he was acting under the scope of his duties, Garcia is entitled to judgment as a matter of law on Count I of the City's Crossclaim against him.   Accordingly, Plaintiff's Motion for Judgment on the Pleadings on Count I of the City's Crossclaim [Doc. 51] is denied as moot, and the Court finds no need to address the procedural questions raised by the parties.

Next, in her Motion for Summary Judgment, Plaintiff requests "this Court to enter judgment *in her favor* and order the City of Las Cruces to pay any judgment or settlement resulting from Defendant Garcia's actions."   [Doc. 155, p. 21 (emphasis added)]   The City submits that it would be improper for this Court to grant Plaintiff summary judgment on its Crossclaim, to which she is not a party, because: 1) Plaintiff lacks "standing" under Section 41-4-4, in that it is the public employee and not the victim who is entitled to the defense and to have the governmental entity pay the judgment entered against him or her [Doc. 166, pp. 4-8]; 2) the federal rules do not allow a party to move for summary judgment on a claim to which it is not a party [Doc. 166, pp. 8-9]; and again, 3) Garcia was not acting in the scope of his duties [Doc. 166, pp. 10-12].   The Court concludes that

---

[8] This action was subsequently dismissed for lack of jurisdiction.  [Doc. 82, p. 3 n.2]

the City's second argument here is persuasive and thus the Court does not address the City's first argument (and it has already ruled against the City on its third argument).

The City filed a Crossclaim against Michael Garcia, seeking a declaratory judgment that it had no duty to defend Garcia or pay damages on his behalf. The City did not join Plaintiff as a party to that action, and Plaintiff did not seek to intervene under Federal Rule of Civil Procedure 24. Rule 56(a) states: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and *the movant is entitled to judgment as a matter of law*." (Emphasis added). The problem for Plaintiff is that, not being a party to the Crossclaim, she cannot obtain a judgment on it. *See Sung v. Hamilton*, 676 F.Supp.2d 990, 995 n.1 (D.Ha. 2009) ("Plaintiff also seeks summary judgment on portions of TGES's Crossclaim against the remaining defendants. However, Plaintiff may not do so as Plaintiff is not a party to TGES' crossclaim."); *c.f. Smith v. Cummings*, 445 F.3d 1254, 1259 (10th Cir. 2006) ("[T]he department is not a party, so no judgment could be entered against it."). Because she is not a party to the crossclaim, her Motion for Summary Judgment [Doc. 155] must be denied.

Finally, in ruling on this issue, the Court is expressly not addressing the City's argument concerning whether Plaintiff has a legally cognizable interest in the City's duty to pay for any judgment against Garcia under Section 41-4-4 and New Mexico law. [Doc. 53, pp. 3-7] *Compare Niederstadt v. Town of Carrizozo*, 2008-NMCA-053, ¶¶ 1, 2, 28, 143 N.M. 786, 182 P.3d 769 (N.M. Ct. App. 2008) (addressing tort victim's claim against town which employed tortfeasor, where tortfeasor assigned his claim against town to defend and satisfy a judgment against him to the victim of the tortfeasor) *and*

24

*McBrayer*, 2000-NMCA-104, ¶ 21 (stating that the legislature "chose another course" than to leave "the victim uncompensated if the employee were judgment proof") *with Bryson v. City of Oklahoma City*, 627 F.3d 784, 791-92 (10th Cir. 2010) (determining that the victim of the governmental tortfeasor was not the real party in interest under Oklahoma indemnification statute which included the requirement that only the "real party in interest" could file an application for indemnification from the state).

### E. *Las Cruces' Motion for Partial Summary Judgment on Count I & II of Plaintiff's Complaint [Doc. 81]*

The City moves for Summary Judgment on Plaintiff's first and second counts [Docs. 81, 82], which Plaintiff brought solely against Garcia.  [Doc. 1, ¶¶ 97-113]  The City argues:

> The Court must enter judgment as a matter of law on Counts I and II of Plaintiff's complaint to the extent she would require the City to pay damages resulting from a jury verdict on those claims and/or any settlement Garcia reaches with Plaintiff.   Under NMSA 1978 § 41-4-16 and established case law, Plaintiff's failure to notify the City of Las Cruces within 90 days of Garcia's sexual assault relieves the City of any obligation to pay for Garcia's actions.  Alternatively, even if Plaintiff had properly furnished a Tort Claim Notice, she is precluded from recovering against the City more than the amounts set forth under NMSA 1978 § 41-4-19.

[Doc. 82, p. 4]  Plaintiff responds that the case of *Niederstadt* controls, that "state law cannot abrogate a federal civil right," [Doc. 95, p. 2], and that the City cannot obtain summary judgment against her because it did not file a counterclaim against her.  [Doc. 95, pp. 3-7]

Here again the Court agrees with the procedural argument that a party cannot obtain summary judgment in its favor on a claim to which it is not a party. Fed. R. Civ.

P. 56(a).  Plaintiff's first and second counts are only against Michael Garcia in his individual capacity and not against the City.  The City did not file a counterclaim against Plaintiff seeking a declaration that it was not responsible for paying a judgment to Plaintiff based on the lack of notice, nor did the City seek a declaration that it would only have to pay only up to the statutory caps set forth in Section 41-4-19.  *Compare Niederstadt*, 2008-NMCA-053, ¶ 2 (injured party filed suit against town seeking a declaratory judgment that it must satisfy the injured party's judgment against the Town's employee).  Accordingly, the Court cannot grant judgment for the City on this ground. *See Sung*, 676 F.Supp.2d at 995 n.1 ("Plaintiff also seeks summary judgment on portions of TGES's Crossclaim against the remaining defendants.  However, Plaintiff may not do so as Plaintiff is not a party to TGES' crossclaim."); *c.f. Smith*, 445 F.3d at 1259 ("[T]he department is not a party, so no judgment could be entered against it.").

**CONCLUSION**

For the reasons set forth above, the Court grants judgment for Defendant Garcia on Count I of Las Cruces' Crossclaim against him.  Garcia does not address the City's second Count against him in his motion for summary judgment, which alleges that the City is entitled to recover from Garcia.  [Doc. 14, ¶¶ 32-34]  Accordingly, *Defendant Michael Garcia's Motion for Summary Judgment on Defendant City of Las Cruces' Crossclaim* [Doc. 156] is **GRANTED-IN-PART** as to Count I and **DENIED-IN-PART** as to Count II.

For the reasons set forth above, *Defendant City of Las Cruces' Motion for Partial Summary Judgment on Count I of its Cross Claim* [Doc. 27] is **DENIED**.

26

For the reasons set forth above, *D.G.'s Motion for Judgment on the Pleadings Seeking Dismissal of Count I of the City of Las Cruces' Cross Claim Asserted Against Defendant Michael Garcia* [Doc. 51] is **DENIED AS MOOT**.

For the reasons set forth above, the City's *Motion for Partial Summary Judgment on Count[s] I & II of Plaintiff's Complaint* [Doc. 81] *is* **DENIED**.

For the reasons set forth above, *Defendant City of Las Cruces' Opposed Motion for Leave to file Supplemental Exhibit* [Doc. 115] is **DENIED**.

For the reasons set forth above, *D.G.'s Motion for Summary Judgment on Count I of the City of Las Cruces' Crossclaim Against Defendant Michael Garcia* [Doc. 155] is **DENIED**.

**SO ORDERED** this 1st day of February, 2016 in Albuquerque, New Mexico.

M. CHRISTINA ARMIJO
Chief United States District Judge

27